## PROEBSTEL *v.* HOGUE and others.

*(Circuit Court, D. Oregon. March 9, 1883.)*

**DONATION TO MARRIED PERSONS UNDER SECTION 5 OF THE DONATION ACT.**

Upon the death of a married donee, intestate, under section 5 of the donation act, (9 St. 497,) after compliance with the act, and before the issue of a patent, the share of the deceased in the donation descends to his or her heirs, under the local law of descents, (Or. Laws, 547,) and is not affected by the provision in section 4 of said act, giving the share of a married donee, dying under like circumstances, to the survivor and children, or heirs of the deceased, in equal parts.

At Law. Action to recover possession of real property.

*Geo. H. Williams,* for plaintiff.

*Joseph N. Dolph* and *Benton Killin,* for defendants.

DEADY, J. This action is brought to recover the possession of the N. ½ of the Wendell Proebstel donation, the same being situate in Multnomah county, and consisting of parts of sections 27 and 28 of town-

ship 1 N., of range 1 E., and containing about 160 acres, alleged to be of the value of $6,000. From the complaint it appears that Wendell Proebstel, on November 15, 1852, settled upon the donation in question under the donation act of September 27, 1850, (9 St. 497,) and that at the time he was married to Jane Proebstel and otherwise qualified to become a married settler on the public lands in Oregon, under said act; that in May, 1853, he filed his notification and preliminary proof of said settlement, and on July 27, 1857, made his final proof of four years' residence and cultivation; that on March 31, 1866, a patent certificate was issued to him designating the N. $\frac{1}{2}$ of the donation as inuring to his said wife Jane and the S. $\frac{1}{2}$ to himself, and on August 30, 1871, a patent was issued for the same in accordance therewith. In June, 1867, said Jane died intestate "without ever having had any children, and leaving no lineal descendants and without any kindred in the United States, but leaving her said husband surviving and in possession of said land;" that on November 18, 1868, and while said Wendell was in the possession of the donation, the plaintiff was married to him, and went to reside on the premises, where they remained until July 7, 1874, when said Wendell died intestate, "no children ever having been born to him, and leaving no lineal descendants," and leaving the plaintiff in the possession of the donation, where she remained until April 19, 1879, when the defendant Hogue wrongfully dispossessed her of the N. $\frac{1}{2}$ thereof, and, together with his co-defendants, now wrongfully withholds the possession of the same from her.

The complaint then further alleges "that by virtue of the provisions of said act of congress and the statutes of Oregon regulating the descent of real property" the plaintiff "became, upon the death of her said husband, and now is, the owner in fee of the property wrongfully withheld from her by the defendants as aforesaid;" and "that she is entitled to the present possession of said property—the same never having been sold or conveyed by, through, or on account of the said husband."

The defendant Philo Holbrook, answering, disclaims any interest in or claim to the possession of the premises; and the defendants Hogue, Catlin, and Muir demur to the complaint for that the court has no jurisdiction and the facts stated do not constitute a cause of action.

Jurisdiction is not claimed in this case on account of the difference in the citizenship of the parties, who are all understood to be citizens of Oregon; but it is claimed upon the ground that the suit

arises under a law of the United States, to-wit, the donation act of September 27, 1850, *supra,* under which Proebstel settled upon and occupied the premises.

The first section of the judiciary act of March 3, 1875, (18 St. 470,) confers upon the circuit courts of the United States jurisdiction "of all suits of a civil nature at common law or in equity, when the matter in dispute exceeds, exclusive of costs, the sum or value of $500, arising under the constitution or laws of the United States."

In *Ry. Co.* v. *Mississippi,* 102 U. S. 141, Mr. Justice HARLAN, speaking for the court, says "that cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right of privilege, or claim, or protection, or defense of the party, in whole or in part, by whom they are asserted;" and he adds "that it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the constitution or laws of the United States." To the same effect is *Bybee* v. *Hawkett,* 6 Sawy. 598, [S. C. 5 FED. REP. 1,] decided in this court.

The claim of the plaintiff in this case is that upon the death of Jane, after the compliance by Wendell with the requirements of the donation act, and before the issue of the patent, the donation act gave her share in the donation to said Wendell, and that thereafter, upon the death of the latter, it descended to her under the laws of Oregon. Comp. 1874, p. 547. And it is based upon the assumption that the express provision to that effect in section 4 of the donation act, concerning a married settler thereunder, is or ought to be held equally applicable to the case of married persons claiming under section 5 of said act, as Wendell and Jane, and also the conclusion, which might very properly have been alleged in the complaint, that by operation thereof Wendell took Jane's share in the donation upon her death. Admitting this, it is not disputed that the plaintiff, upon the death of the former, succeeded by descent, under the laws of Oregon, to the premises. But the proposition that Wendell succeeded to Jane's share in the donation is denied by the demurrer—the defendants contending that upon the death of Jane such share was no longer within the operation of the donation act, but that the same descended to her heirs under the laws of Oregon, under whom it is understood they claim.

The decision of this issue or question turns solely upon the proper construction of the donation act. It matters not how it may be decided, or how probable or improbable is the claim of the plaintiff.

The determination of the question is the disposition of a case or suit arising under such act of congress. The jurisdiction is undoubted.

By section 4 of the donation act there was granted to every white settler on the public lands then residing in Oregon, "who shall have resided upon and cultivated the same for four successive years" and otherwise complied with the provisions of such act, if a single man, 320 acres of land, and if a married man, 640 acres,—"one-half to himself and the other half to his wife, to be held by her in her own right; and the surveyor general shall designate the part inuring to the husband and that to the wife, and enter the same on the records of his office; and in all cases where such married persons have complied with the provisions of this act, so as to entitle them to the grant as above provided, whether under the late provisional government of Oregon, or since, and either shall have died before patent issues, the survivor and children or heirs of the deceased shall be entitled to the share or interest of the deceased, in equal proportions, except where the deceased shall otherwise dispose of it by testament duly and properly executed according to the laws of Oregon."

Section 5 of the same act granted "to all white male citizens of the United States" above the age of 21 years, "emigrating to and settling" in Oregon between December 1, 1850, and December 1, 1853, and to all such citizens "not hereinbefore provided for, becoming one-and-twenty years of age," in Oregon, and settling there between said dates, "who shall in other respects comply with the foregoing section and the provisions of this law," if a single man, 160 acres of land, or if a married one, 320 acres,—"one-half to the husband and the other half to the wife, in her own right, to be designated by the surveyor general as aforesaid."

Section 5, as may be seen, is silent as to the disposition of the husband's or wife's share in the donation, in case he or she should die intestate before the issue of a patent therefor, and therefore the defendants contend that it descended to the heirs of the deceased, according to the local law.

But the plaintiff maintains that the clause in section 4, providing for the disposition of the share or interest of the deceased in such contingency ought to be applied to a like case occurring under section 5. As will be seen this is not a mere question of interpretation of the words of the statute, but of the construction of it, and its solution involves the inquiry, whether, taking into consideration the spirit and purpose of the whole act and the circumstances which led to its enactment, this clause in section 4, that, by its language, is

limited to cases arising thereunder, was intended by the legislature to apply to similar cases arising under section 5.

The argument of the case has gone upon the theory that if upon the death of Jane her share in the donation did not descend under the local law but went in the path prescribed by the donation act for like cases arising under section 4 thereof that then Wendell took the whole of it as survivor, while it appears upon the language of the act that he only took an equal portion with the heirs of Jane, be they near or remote, many or few.

Counsel for the plaintiff relies largely upon the case of *Silver* v. *Ladd,* 7 Wall. 219, in which it was held that the grant in section 4 embraced an unmarried woman, as furnishing the key-note to the construction of the donation act—that it is a most benevolent one, and to be liberally construed. But manifestly the court only intended this liberal rule of construction to extend to questions arising under the act between the government and persons claiming rights as settlers or donees thereunder, and not to questions arising between such settlers or donees or those claiming under them; and even as thus understood, it was applied to settlers under section 4. And so Mr. Justice MILLER, after stating (*Silver* v. *Ladd, supra,* 225,) that section 4 of the act "was passed for the purpose of rewarding in a liberal manner a meritorious class who had taken possession of the country and held it for the United States under circumstances of great danger and discouragement," lays down the rule for the construction of the act, as between this "meritorious class" and the United States, as follows:

"Anything, therefore, which savors of narrowness or illiberality in defining the class, among those residing in the territory in those early days, and partaking of the hardships which the act was intended to reward, who shall be entitled to its benefits, is at variance with the manifest purpose of congress."

By the language of the provision in question its operation is confined to settlers under section 4. They are designated therein as "*such* married persons"—that is, the married persons spoken of in the preceding words of such section; and also as the "married persons" who have complied with the act "so as to entitle them to the grant as above provided"—that is, as provided in the foregoing part of section 4.

In *Chambers* v. *Chambers,* 4 Or. 153, the supreme court of the state held, upon this ground, that the provision was not applicable to the case of settlers under section 5, and that the shares of the wife of a

settler under said section, upon her death, after compliance with the act, descended to her heirs according to the local law of descents.

Nor does this provision manifest any absolute or controlling purpose on the part of congress, even as to settlers under the fourth section, to establish a sort of joint tenancy in the donation between the husband and wife prior to the issue of the patent with the *jus accrescendi* or right of survivorship to the longest liver. For this survivorship, if it may be so called, was only to take effect in case the·deceased did not dispose of his or her interest by will; and even then it was limited to an equal share in the donation with the children or heirs of the deceased, be the latter whom they may. *Davenport* v. *Lamb*, 13 Wall. 428; *Cutting* v. *Cutting*, 6 Sawy. 404; [S. C. 6 FED. REP. 259.]

And since the act of July 17, 1854, (10 St. 306,) amendatory of the donation act, either of "such ·married persons" might have disposed of his or her interest in the donation by a sale and conveyance thereof, so as to cut off any right of survivorship under this provision in section 4. *Barney* v. *Dolph*, 97 U. S. 652.

But, on the other hand, the power to devise was unqualified, and under it the testator might dispose of his or her share of the donation to any one, however remote from or unrelated to the survivor. There is nothing, then, in this provision in section 4 giving the surviving husband or wife an equal portion in the deceased's share of the donation with his or her children or heirs which calls for its application to donations under section 5. Nor, in my judgment, is there anything in the circumstances of the case that requires the extension of this provision beyond the cases for which it purports to have been made, or that indicates it was or might have been the intention of congress to make it so.

At the passage of the donation act there was no statute of descents in force in Oregon. Prior to September 12, 1849, when a person died in "the lawful possession of a land claim" it was considered a part of his personal estate, and disposed of by his executors or administrators accordingly. Or. Laws 1843–49, p. 61. By an act of that date (Or. Laws 1850–1, p. 246) it was provided that "land claims shall descend to and be inherited by the heirs at law of the claimant, in the same manner as is provided by law for the descent of real estate." But all that could have been meant or intended by this act was that such "heirs" should have the first right to the possession of the claim, for the territorial legislature was expressly prohibited by section 6 of the

organic act (9 St. 323) from passing any act "interfering with the primary disposal of the soil." Nor was there any law regulating "the descent of real estate" in Oregon other than the common law, and how far that was applicable or in force was a matter as yet undetermined. The territory had just been organized, and but one session of the legislature had been held, (1849.) The grant made by the fourth section of the act was confined to persons then in the territory or who should become resident thereof before the following December—a provision intended for the benefit of the immigrants of that year, then well across the plains. The greater portion of these contemplated beneficiaries had already complied with the meritorious conditions of the act—residence and cultivation—and were entitled to the grant as soon as the law could be put in operation, so as to enable them to make their notifications and proof.

Under this state of things this provision was probably put in section 4 to meet the contingency of the death of a married donee under it, occurring between compliance with the act and the issue of a patent and before the local legislature had established a law of descents for estates of inheritance in real property, then for the first time existing in the territory. But as to section 5 the case was different. This grant was made to persons coming into the country after December 1, 1850, who should reside upon and cultivate the same for four successive years thereafter, and in the mean time the subject could be regulated by the territorial legislature, whose power under section 6 of the organic act, *supra*, extended "to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States." And, in the case of persons dying before the completion of such residence and cultivation, and before the right to the grant vested in the settler and his wife, so as to give them an estate of inheritance therein, provision was made for the disposition of the possessory right of the settler by section 8 of the donation act.

On December 14, 1853, (Or. Laws 1853–4, p. 350,) the territorial legislature passed an act concerning the descent of real property, in which it was provided that, "when any persons shall be seized of any lands, tenements, or hereditaments, or any right thereto, or entitled to any interest therein in fee-simple, or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts," as therein prescribed. This law has been substantially in force ever since, except the period between June 1, 1863, and October 24, 1864; and under it, upon the death of Jane Proebstel in June, 1867, her share of the donation in which she then had an in-

heritable estate, descended to her heirs—to her lineal descendants first, and in default of these, to her collateral heirs.

These two sections,—the fourth and fifth,—although parts of one act, and containing some provisions in common, are in essentials different and independent grants. They are made upon different motives and considerations, for different quantities of land, and to a different class of persons. The first had its motive in the past and the second in the future. The one was made as a reward for immigration and settlement substantially accomplished, and the other was offered as an inducement for future immigration and settlement. *Silver* v. *Ladd, supra,* 227; *Chambers* v. *Chambers, supra,* 155.

In *Barney* v. *Dolph, supra,* 654, Mr. Chief Justice WAITE, who has done so much towards a lucid and comprehensive exposition of this donation act, says: "Section 4 was evidently intended for the benefit of this class"—that is, the early settlers who at the passage of the act were occupying the country under the land law of the provisional government; and that the provision in that section concerning the disposition of the donation to married persons in case of the death of one of them, after compliance with the act and before the issue of a patent, is, from "the language used, evidently" confined "in its effect to the married person mentioned" therein.

The demurrer is sustained.