[No. 23763. Department Two. June 27, 1932.]

EMMA LISKA, *Appellant*, v. EMILIE BECKMANN *et al.,* *Respondents.*[1]

[1]Reported in 12 P. (2d) 599.

490

*Spencer Gray,* for appellant.
*Joseph Matsen,* for respondent.

Millard, J.—On May 27, 1920, Andrew Moe and wife executed and delivered to Osner & Mehlhorn, Inc., their promissory note for twenty-five hundred dollars, secured by a mortgage maturing three years later on certain real estate owned by them in King county. That mortgage was placed of record in the office of the King county auditor May 28, 1920, and on the same date assigned by Osner & Mehlhorn to C. L. Beckmann. (The assignment was not recorded until September 4, 1930.)

Thereafter, the Moes conveyed the property, subject to the mortgage, to Ole Bjornstad and wife. By operation of law, the Moe mortgage became the property of Emilie Beckmann, the widow of C. L. Beckmann. Upon maturity of the mortgage in 1923, the Beckmanns gave an extension thereof for three years to Bjornstad. By letter of February 21, 1927, Osner & Mehlhorn transmitted to Bjornstad notice of nine months' interest on the mortgage, informed Bjornstad that the mortgage matured May 27, 1926, and requested him to "kindly inform us what your intentions are in regard to this mortgage, as our client who holds the same has asked concerning the same."

It was agreed between Osner & Mehlhorn and Bjornstad that Bjornstad execute a new mortgage to Osner & Mehlhorn on that property for three thousand dollars; that the new mortgage be sold and the proceeds applied in payment of the Beckmann mortgage.

Bjornstad, with the knowledge that Osner & Mehlhorn did not own the prior mortgage of twenty-five hundred dollars, executed on August 22, 1927, to Osner & Mehlhorn a mortgage on the property for three thousand dollars. He accepted Mehlhorn's assurance that the prior mortgage would be satisfied. He made no investigation to ascertain whether the mortgage was satisfied.

Both Mrs. Emma Liska and the Beckmanns had had prior dealings in the matter of investments with the firm of Osner & Mehlhorn. In November, 1927, there was a credit on the books of Osner & Mehlhorn in favor of Mrs. Liska in the sum of $2,328.75, which that firm had theretofore collected on a mortgage owned by Mrs. Liska.

Mrs. Liska, whose account with Osner & Mehlhorn was originally solicited by her son-in-law, a Mr. Pichon, who was an employee in the office of Osner & Mehlhorn, purchased the mortgage executed by Bjornstad to Osner & Mehlhorn. Assignment thereof to Mrs. Liska by Osner & Mehlhorn was made November 16, 1927. This assignment was not placed of record by Mrs. Liska until August 30, 1930, which was subsequent to the disappearance of Mr. Mehlhorn. Mrs. Liska deposited with Osner & Mehlhorn $671.85, which, with the credit of $2,328.75 mentioned above, was used for the purchase of the Bjornstad three thousand dollar note and mortgage. Mrs. Liska was informed by Mehlhorn that the Bjornstad mortgage was a first mortgage upon the property.

On August 27, 1927, five days after the execution by Bjornstad of the mortgage to Osner & Mehlhorn, which was three months prior to the sale of that mortgage to Mrs. Liska, and without any money having been received from any one as payment of the Beckmann mortgage, the Beckmanns were credited with

twenty-five hundred dollars by Osner & Mehlhorn. The Beckmanns were never informed that they had such a credit in the office of Osner & Mehlhorn. Mr. Pichon, son-in-law of Mrs. Liska and employee of Osner & Mehlhorn, on whose solicitation Mrs. Liska opened an investment account with Osner & Mehlhorn, testified that he credited the Beckmann account with twenty-five hundred dollars by stamping ''Paid'' upon the card in the Osner & Mehlhorn office carrying the record of the mortgage held by Beckmann; that, at that time, Osner & Mehlhorn had not received any money as payment of the Beckmann mortgage.

There is no evidence that Mrs. Beckmann ever knew that Bjornstad executed the mortgage to Osner & Mehlhorn. She never knew that the note (which Osner & Mehlhorn did not indorse) and mortgage of Bjornstad for three thousand dollars were assigned to Mrs. Liska. The Moe mortgage held by Mrs. Beckmann was not satisfied. Osner & Mehlhorn continued to pay the interest on the Moe mortgage to Mrs. Beckmann, as it became due, up to and until the disappearance of Mr. Mehlhorn in August, 1930. Mrs. Liska had no notice of the Beckmann mortgage other than constructive notice arising from its having been recorded by Osner & Mehlhorn May 20, 1920.

On the foregoing facts, Mrs. Liska sought to have her mortgage decreed the first mortgage upon the real property in question on the ground of estoppel. The trial court expressed the view that

'' . . . the most that the evidence shows is that Osner & Mehlhorn had power, as agent, to collect moneys due Mrs. Beckmann, but it is not sufficient to establish that said company had power to satisfy mortgages or to substitute mortgages without the consent of Mrs. Beckmann,''

and decreed the Beckmann mortgage a first lien on the Bjornstad property. The plaintiff appealed.

This contest for priority between appellant Liska and respondent Beckmann, as assignees from a common assignor (Osner & Mehlhorn, Inc.) of different mortgages covering the same real property, was correctly decided by the trial court.

Appellant was not an innocent purchaser of the mortgage of Bjornstad to Osner & Mehlhorn. The mortgage of Moe to that firm covering the same property was recorded in the office of the county auditor May 28, 1920. Of that mortgage, the appellant had constructive notice. The failure of the Beckmanns to record until September 4, 1930, the assignment to them in 1920 by Osner & Mehlhorn of the Moe mortgage, in no wise prejudiced the appellant. Accepting as true Mehlhorn's representation that the mortgage assigned to her was a first mortgage, appellant refrained from making any investigation of the record of titles in the county auditor's office. An examination of the record would have disclosed the fact that the mortgage executed by Moe had not been satisfied.

When appellant placed of record August 30, 1930, the assignment of the Bjornstad mortgage, it fairly appears that she then knew what had happened. Appellant did not, by reason of the assignment to her November 16, 1927, of the Bjornstad mortgage, acquire any greater rights in the property than the assignor had. The assignor, Osner & Mehlhorn, had no assignable interest in the property, for the reason that the Moe mortgage to Osner & Mehlhorn of the same property had by the mortgagee, Osner & Mehlhorn, been previously assigned to Beckmann; and of that mortgage the appellant had constructive notice.

The auditor's record gave the appellant notice of the prior mortgage on the property, which mortgage was assigned to Beckmann. It was the duty of the appellant, in the exercise of proper diligence, to ascertain

whether her vendor, Osner & Mehlhorn, was still the owner of that mortgage; and, if so, to see that it was discharged of record. The appellant's omission to do so deprives her of the protection of a bona fide purchaser. *Berger v. Baist,* 165 Wash. 590, 6 P. (2d) 412.

 Nor is the appellant entitled to relief on the ground of estoppel. The elements of estoppel *in pais* are lacking. Respondent Beckmann was not a party to the transaction between Osner & Mehlhorn and Bjornstad. Neither was she a party to the transaction between appellant and Osner & Mehlhorn. She had no knowledge of those transactions. The dealings between the Beckmanns and Osner & Mehlhorn consisted of purchases by the former from the latter of mortgages, and the collection by the latter for their customer of interest and principal. There is evidence that respondent Beckmann authorized an occasional extension by Osner & Mehlhorn of a mortgage. There is no evidence of authorization to Osner & Mehlhorn to accept for the Beckmanns payment in anything other than money. The authorization to collect for the respondent principal and interest on mortgages would not authorize the agent to take as payment of his principal's mortgage a mortgage payable to the agent, to be held by the agent for several months and thereafter used by the agent for the purpose of paying the agent's debts to a third person.

The doctrine that, as between two innocent parties, the person who made the fraud possible should suffer the loss, can not be successfully invoked in behalf of the appellant. Had appellant, as we said above, exercised the care required of her in the purchase of the mortgage she seeks to foreclose, she would have discovered the recorded mortgage of 1920 existing as a prior lien against the property. Respondent was in no position to warn the appellant. She did not know

that Bjornstad had executed a new mortgage to Osner & Mehlhorn, and she did not know that that mortgage had been assigned by Osner & Mehlhorn to the appellant.

*Kiley v. Bugge,* 165 Wash. 677, 5 P. (2d) 1038, is not in point. In that case, we held that Bugge, by executing a mortgage and placing it in the hands of Osner & Mehlhorn without requiring any evidence from that firm of the discharge of the prior mortgage, was in no position to successfully urge, as against the assignee of that second mortgage, the plea of want of consideration.

We have examined all of the authorities cited. They are either distinguishable on the facts from the case at bar or are not out of harmony with the views herein expressed.

The judgment is affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MAIN, JJ., concur.