[No. 25406. Department Two. June 25, 1935.]

OLGA VON NORMANN, *Appellant,* v. FRED WOODSON, *Individually and as Executor, et al., Respondents,* GEORGE R. DEVER, *as Trustee in Bankruptcy, et al., Defendants.*[1]

[1]Reported in 46 P. (2d) 1050.

*Allen, Froude & Hilen,* for appellant.

*Roberts, Skeel & Holman, W. E. Evenson, Grinstead, Laube, Laughlin & Meakim, Gordon B. Dodd, J. Speed Smith,* and *Henry Elliott, Jr.,* for respondents.

BLAKE, J.—July 27, 1925, defendant Woodson executed and delivered three mortgage notes to Osner & Mehlhorn, Inc. At the same time, he executed and delivered to Osner & Mehlhorn a mortgage on lot 3, block 24, of Pontius Addition to Seattle.

One of the notes, for two thousand dollars, was payable July 27, 1928. On August 28, 1925, Osner & Mehlhorn sold and delivered this note to plaintiff. Woodson had no notice, actual or constructive, of the transfer of the note to plaintiff. He paid interest as it fell due to Osner & Mehlhorn. The latter remitted the interest payments to plaintiff.

When the note came due, plaintiff called Osner & Mehlhorn by telephone to inquire whether collection had been, or would be, made. There is some confusion in plaintiff's testimony as to the purport of this telephone conversation. We think, however, defendants' interpretation may be accepted, which is to the effect that plaintiff authorized Osner & Mehlhorn either to extend the mortgage or collect the note.

Osner & Mehlhorn, however, did neither. Woodson, desiring to obtain some money, applied for a new loan of approximately $3,500, which Osner & Mehlhorn made to him. This transaction was handled in the following manner: October 9, 1928, Woodson executed and delivered to Osner & Mehlhorn three notes aggregating $2,500. To secure the notes, he executed, on .

the same date, a mortgage upon the property hereinbefore described. On the same day, he executed and delivered to German Bond & Investment Company (a corporation dominated by Mehlhorn) a note for $1,195. This note was secured by what was intended to be a second mortgage on the same property. From the proceeds of these loans, Woodson received from Osner & Mehlhorn $1,107.89. The balance he left in the hands of Osner & Mehlhorn, charging them with the duty of using it to pay the balance on the loan of July 27, 1925, and trusting them to release that mortgage of record. This Osner & Mehlhorn failed to do. They appropriated the money to their own use, and continued to remit interest to plaintiff on the note held by her.

Subsequent to October 9, 1928, Osner & Mehlhorn sold and assigned the three notes and mortgage (executed and delivered on that day to Osner & Mehlhorn) to the defendants Matzdorf, Webber and Else Mehlhorn. As Woodson made interest payments on those notes to Osner & Mehlhorn, the latter remitted the same to Matzdorf, Webber and Else Mehlhorn.

It was not until after Mehlhorn décamped in August or September, 1930, that plaintiff, on the one hand, learned of the existence of the mortgages of October 9, 1928, and, on the other, that Woodson, Matzdorf, Webber and Else Mehlhorn learned of the continued existence of the mortgage of July 27, 1925.

Thereafter, plaintiff commenced this action to foreclose the mortgage of July 27, 1925. The defendants Woodson, Matzdorf, Webber and Else Mehlhorn filed separate answers. At the trial, Woodson took the position that his execution and delivery to Osner & Mehlhorn of the mortgages of October 9, 1928, effectuated payment of the debt evidenced by the note held by plaintiff. Matzdorf, Webber and Else Mehlhorn joined in this view, but contended further that plaintiff,

having failed to file for record any notice of her interest in the mortgage of July 27, 1925, is estopped to claim priority for it over the mortgage of October 9, 1928. The trial court took the view that Woodson's indebtedness on the note held by plaintiff was discharged by his execution and delivery to Osner & Mehlhorn of the notes and mortgages of October 9, 1928. Accordingly, judgment was entered dismissing the action. Plaintiff appeals.

We are faced with what is probably the most difficult question courts are called upon to answer: Which of two innocent persons must be allowed to suffer for wrongs perpetrated by a third? While the question is one which is of equitable cognizance, it can, in most cases, be determined by the application of sound and well established principles of law. This case is such a one.

The following principles, which we deem are controlling in this case, are elementary and find support in the decisions of this court: (a) An agent authorized to collect a debt has no power to release the debt or accept payment in any medium but money (*Wees v. Page,* 47 Wash. 213, 91 Pac. 766). (b) The acceptance for collection by an agent of a second note and mortgage, from the proceeds of which the debtor intends his prior note and mortgage to be paid, does not constitute a payment in money (*Hink v. Mehlhorn,* 174 Wash. 351, 24 P. (2d) 1061). (c) Authority given to an agent by the holder of a note and mortgage to extend the mortgage loan does not authorize the agent to take a new note and mortgage in his own name (*Liska v. Beckmann,* 168 Wash. 489, 12 P. (2d) 599). (d) Payment to an agent who does not have possession of the note is made at the peril of the payor (*Allen v. Farmers & Merchants Bank of Wenatchee,* 76 Wash. 51, 135 Pac. 621). (e) Of two per-

sons injured by the wrongful act of a third, he who makes the loss possible must suffer (*Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101).

Applying these principles to the facts in this case, we find that the injury was made possible only by Woodson's failure to require Osner & Mehlhorn to deliver to him the note of July 27, 1925, when he executed and delivered to them the notes and mortgages of October 9, 1928. It is a salutary rule of law that holds him responsible for the situation thereby created. In view of the negotiability of promissory notes, it is only through rigid adherence to this rule that innocent persons can be protected in dealings with agents who prove to be dishonest.

There is not a scintilla of evidence that Osner & Mehlhorn were general agents for appellant. This is the only transaction she ever had with them. Viewed in the light most favorable to respondents, the authority of Osner & Mehlhorn was to collect or extend the mortgage. They did neither.

Nor is there evidence in the record of any element of estoppel which would preclude appellant from asserting the validity and priority of the mortgage of July 27, 1925. It is suggested that her failure to file notice of her ownership of the note amounts to such. We have, however, held otherwise in *Liska v. Beckmann, supra.*

It would serve no useful purpose to review the many cases that have come to this court as a result of Mehlhorn's chicanery. It will suffice to say that, as we view it, the judgment of the trial court could be upheld only by overruling the cases of *Liska v. Beckmann, supra,* and *Hink v. Mehlhorn, supra.* This we decline to do, because we believe that those cases pronounce sound principles, which, if applied, will work justice—as near as may be—in this class of cases.

The judgment is reversed, and the cause remanded with directions to enter judgment foreclosing appellant's mortgage as a prior lien to the mortgages executed by Woodson on October 9, 1928.

MILLARD, C. J., MITCHELL, and STEINERT, JJ., concur.

HOLCOMB, J. (dissenting)—While I have no difference with the majority as to most of the general principles pronounced in the prevailing opinion, I am thoroughly convinced that they are misapplied under the record in this case. I am unable to conceive how it can be concluded that Mehlhorn was not the general agent for appellant in this particular transaction, or how it can be held the injury in this case was made possible only by Woodson's failure to require Mehlhorn to deliver to him the note of July 27, 1925, when he executed and delivered to it the three notes and mortgages of October 9, 1928.

The trial court, after hearing the evidence, seeing the witnesses and being more able to judge of their credibility, in substance found that Woodson never saw or heard of appellant or knew that she had or claimed any interest in the property or her promissory note of 1925; that the first notice and knowledge of Woodson that she had the note or any claim concerning the property was when the original complaint of appellant in this action was served on Woodson in 1931.

Upon this record and the finding of the trial court, which it was fully justified in making, accepting the testimony of Woodson and rejecting that of appellant, it is plain to me that appellant herself grossly neglected to protect her interests or to give notice of any rights in her whereby respondents were misled and were the more innocent parties in the transaction.

The judgment should be affirmed. Therefore, I dissent.