Mr. Justice MILLER
 

 delivered the opinion of the court.
 

 The donation certificate granted to Elizabeth Thomas was set aside by the Commissioner of the Land Office, June 25, 1862, on the ground'that Elizabeth Thomas was not the head of a family. On appeal to the Secretary of the Interior, the action of the commissioner was affirmed, on the ground that she was not a settler on the land. The Supreme Court of Oregon, whose judgment we are now to review, held the certificate void, because she was not such a person as could take lands under the act, being an unmarried female.
 

 If, for any of these reasons, the action of the commissioner can be sustained-, then the judgment of the Supreme Court of Oregon dismissing plaintiff’s bill must be affirmed. If it cannot, then the patents issued to defendants after the certificate of Elizabeth Thomas was wrongfully set aside, must enure to the benefit of plaintiff, representing her equitable title.
 
 †
 

 
 *225
 
 It is upon the application of the facts of this ease to part of section four of the act of 1850, that the questions of construction already mentioned arise.
 

 ■ As there is nothing in this act which requires the settler to be the head of a family, that question may be dismissed without further consideration.
 

 In reference'to the question of actual settlement and residence on the land, wé have only to refer to the case of
 
 Lindsey
 
 v.
 
 Hawes,
 

 *
 

 where this precise question is raised, and where it is said that a person residing in a liouse which is bisected by the line dividing two quarter sections, will be held to reside on both, and, consequently, on either of them, to which he may assert.a claim Nor is any importance'to be attached to the fact that Mrs Thomas was old and incapable of the manual labor necessary to.cultivating ground. If it was done for her by hired servants, or by her son without compensation, it is equally available to her. In reference to this question and to the one next to be considered— namely, the right of unmarried women to the benefits of this statute — we may apply, with added force, the language used in
 
 Lindsey v.
 
 Hawes, that it concerns a construction of one of the most benevolent statutes of the government, made for the benefit of its own citizens, inviting and encouraging them to settle upon its public lands. In addition to this it may be said that the section of this statute which we are now considering was passed for the purpose of rewarding in a liberal manner a meritorious class of persons, who had taken possession of.that country and held it'for the United States, under circumstances of great danger and discouragement. These circumstances and the policy-of this act are fully Stated in the ease of
 
 Stark
 
 v.
 
 Starrs,
 

 †
 

 decided at our last term.
 

 Anything, therefore, which sav.ors of narrowness or illib- ■ erality in defining the class, among those residing in the Territory in those early days, and partaking of the hardships which the act was intended- to reward, -who shall be entitled
 
 *226
 
 to its benefits, is at variance with the manifest purpose of Congress.
 

 With these views we approach the last and most difficult question in the case, namely, whether Mrs. Thomas is excluded from.-the benefit of this act because she was an unmarried woman.
 

 The affirmation of this proposition is based upon that clause of the fourth section, which, in prescribing the quantity of land to be given to each actual settler, says it shall be “ one-half' section, or three hundred and twenty acres, if a single man, and if a married man,” six hundred and forty acres. We admit the philological criticism that the words “single man ” and “ married man,” referring to the conjugal relation of the sexes, do not ordinarily iuclude females. And no doubt it is on this critical use of the words that the decision of the Oregon court is mainly founded.
 

 But, conceding to it all the force it may justly claim, we are of opinion that it does not give the true meaning of the act, according to the intent of its-framers, for the following reasons:
 

 1. The language of the statute is, that there is hereby granted t.o “ every white settler or occupant of the public lands, above the age of eighteen years,” &c. This is intended to be the description of the class of persons who may take, and if not otherwise restricted, will clearly iuclude all women of that age as well as men.
 

 2. It is only in prescribing the quantity of land to be taken, that the restrictive words are used, and even then the words used are capable of being construed generically, so as to include both sexes. In the case of a married man it is clear that it does include his wife.
 

 8. The evident intention to give to women as well as men, is shown by the provision, that, of the six hundred and forty acres granted to married men, one-half shall go to their wives, and be set apart to them by the surveyor-general, and shall be held in their own right. Can there be any reason why a married woman, who has the care and protec
 
 *227
 
 tion of a husband, and who is incapable of making a sepa rate settlement and cultivation, shall have land given to her own use, while the unprotected female, above the age of eighteen years, who makes her own settlement and cultivation, shall be excluded ?
 

 4. But a comparison of the manifest purpose of Congress and the language used by it, in section four of this statute, with those of section five, will afford grounds for rejecting the interpretation claimed by defendants, which are almost conclusive.
 

 The first of these sections applies, as we have already said, to that meritorious class who were then residing in the Territory, or should become residents by the first of December thereafter. It extends to persons not citizens of the United States, to persons only eighteen years old, and it gives to each a half-section of land. The fifth section makes a donation of half this amount, and is restricted to citizens of the United States, or those who have declared their intention to become citizens, and to persons over twenty-one years of age. But what is most expressive in regard to the matter under discussiou is, that the very first line of that section, • in which the class of donees is described, uses the words “white
 
 male
 
 citizens of the United States.”
 

 Now, when we reflect on the class of persons intended to be rewarded in the fourth section, and see that words were used which included half-breeds, foreigners, infants over eighteen, and which provided expressly for both sexes when married, and used words capable of that construction in cases of unmarried persons, and observe that in the next section, where they intend to be more restrictive, in reference to quantity of land, to age of donee, citizenship, &c., they use apt words to express this restriction, and then use the word “white males” in reference to sex, we are forced to the conclusion that they did not intend, in section four, the same limitation in regard to sex, which they so clearly expressed in section five. The contrast in the language used in regard to the sex of the donees in the two sections, is sustained throughout by the other contrasts in
 
 *228
 
 age and character of the donees, and in quantity of land granted.
 

 ■ The certificate of Mrs. Thomas was, therefore, proper' y issued by the register and receiver, and conferred upon her the equitable right to the land in controversy, and the decree of the Supreme Court of Oregon must be reversed.
 

 But the language of the prayer of this bill for relief, and some remarks in the brief of counsel, call for comment on the proper decree to be rendered on the return of the case to .that court.
 

 . The relief given in this class of cases does not proceed upon the ground of annulling or setting aside the patent wrongfully issued. That would leave the title in the United States, and the plaintiff might be as far from obtaining justice as before. And it may be well doubted whether the patent can be set aside without the United States being a party to the suit. The relief granted is founded on the theory that the title which has passed from the United States to the defendant, enured in equity to the benefit of plaintiff', and a court of chancery gives effect to this equity, according to its forms, in several ways.
 
 *
 
 The most usual mode under the chancery practice, unaffected by statute, is to compel the defendant, in person, to convey to plaintiff, or to have such conveyance made in his name, by a commissioner appointed by the court for that purpose. In some of the States it is provided by statute that a decree of the court shall operate as a conveyance where it is so expressed in the decree, and additional relief may be granted by giving possession of the laud to plaintiff, quieting his title as against defendants, and enjoining them from asserting theirs.
 

 The prayer for general relief in the bill in this case is sufficient to justify any or all these modes of relief, and the ca8e is REMANDED TO THE SUPREME COURT OE OREGON for that purpose.
 

 †
 

 Lindsey
 
 v.
 
 Hawes, 2 Black, 554; Garland v. Wynn, 20 Howard, 8; Minnesota
 
 v.
 
 Bachelder, 1 Wallace, 109.
 

 *
 

 2 Black, 554.
 

 †
 

 6 Wallace, 402.
 

 *
 

 Jackson
 
 v.
 
 Lawton, 10 Johnson, 24; Boggs
 
 v.
 
 Mining Company, 14 California, 363-4.