[Argued March 10; decided April 4; rehearing denied July 31, 1893.]

## MARQUAM *v.* SENGFELDER.

[S. C. 32 Pac. Rep. 676.]

1. LIEN OF CHATTEL MORTGAGE — INTEREST OF MORTGAGEE.— In Oregon a chattel mortgage creates more than a mere lien; after condition broken, it gives a right to possession — a qualified ownership of the property mortgaged. *Case Threshing Machine Co.* v. *Campbell*, 14 Or. 460, approved.

2. CHATTEL MORTGAGE — PLEDGE — EQUITABLE LIEN — MORTGAGE LEASE.— A stipulation in a lease that "All personal property in said premises, including furniture and household goods of every description, shall be at all times liable for rent of said premises; and in case of the violation of any of the provisions of this lease by the lessee, the lessor may terminate this lease and hold any property found thereon for any arrears of rent or damages," does not create a chattel mortgage, since the title to the property is not transferred; nor does it create a pledge, for possession was not delivered; it creates only an equitable lien.

3. EQUITABLE LIEN — FRAUD.[1] — The same rules that determine the priority and validity of chattel mortgages, apply with equal force and like effect to equitable liens; and therefore, under subdivision 40 of section 776 of Hill's Code, an unrecorded lien created by a lease creates only a presumption of fraud, which may be rebutted. *Marks* v. *Miller*, 21 Or. 317, approved and followed.

4. DESCRIPTION IN CHATTEL MORTGAGE — "FURNITURE"[2] AND "HOUSEHOLD GOODS"[2] DEFINED.— In a chattel mortgage, or an equitable lien, a description is sufficient if it will enable third persons to identify the property by inquiry or by location; thus a description of the chattels as "all personal property, including furniture and household goods of every description," is sufficient to create a lien on all personal chattels which may contribute to the use or convenience of the householder, or the ornament of his house, under the description of "furniture," and on every household article of a permanent nature which is not consumed in its enjoyment under the term "household goods"; but it will not cover wines, liquors, or groceries.

5. FRAUDULENT CONVEYANCE — PREFERRING CREDITORS.— A debtor, even in failing circumstances, may prefer a creditor, and may appropriate his property to the satisfaction of such creditor's claim (*Kruse* v. *Prindle*, 8 Or. 163, approved and followed); nor is it material that the creditor knew his debtor's financial condition.

[1] NOTE.— The opinions in this case, in *Marks* v. *Miller*, and in *Meier* v. *Hess*, 23 Or. 599, were written under the law as it stood before the act of 1893 ( Laws, 1893, 30 ).— REPORTER.

[2] NOTE.— See the extended definitions of these two words given in 8 Am. & Eng. Enc. 895, and 9 *id.* 782.— REPORTER.

6. EVIDENCE OF FRAUD.— The mere fact that when an officer went to the debtor's store for the purpose of levying an attachment, the debtor requested him not to close it, does not necessarily prove that any secret trust existed between the debtor and another to whom he had previously given a chattel mortgage on his stock of goods, even though the debtor was in failing circumstances.

7. EVIDENCE OF FRAUD.— The fact that after an officer had executed an attachment on a debtor's stock of goods, another creditor to whom the debtor had given a chattel mortgage thereon consented that the debtor's employes might take some of the attached property in payment of the amount due them, does not, of itself, show an intent by the creditor to protect the debtor, where he gave such consent under advice that the debtor's employes were preferred creditors.

Multnomah County: GEO. H. BURNETT, Judge.

Defendants appeal.    Modified.

STATEMENT BY MOORE, J.— This is a suit by P. A. Marquam against Chas. Sengfelder, Wilson Thompson, F. C. Barnes, and others to establish and foreclose a lien on certain personal property for the now payment of rent.    The material facts are as follows:  On November 10, 1891, the plaintiff entered into a written contract with the defendant Sengfelder, under their hands and seals, whereby he leased to the latter stores numbered one hundred and twenty-five and one hundred and twenty-seven on Morrison Street, in the Marquam Block, Portland, Oregon, to be used as a restaurant and confectionery store for the term of three years, at a monthly rental of two hundred and fifty dollars for the first year, three hundred dollars for the second, and four hundred dollars for the third, payable in advance. Said lease contained the following clause: "All personal property, including furniture and household goods of every description, to be at all times liable for rent of said premises.    In case of violation of any of the provisions of this lease by the lessee, the lessor may terminate this lease, and hold any property found thereon for any arrears of rent or damages."    This lease was not filed or recorded, and neither the subsequent mortgagee nor any of the attaching creditors of Sengfelder had any notice or knowl-

edge thereof. On December 3, 1891, the lessee went into posession of the demised premises, paid the installments of rent to January 31, 1892, and operated a restaurant and confectionery store there until February 17, 1892.

On January 22, 1892, Sengfelder was indebted to the Portland National Bank of Portland, Oregon, in the sum of one thousand seven hundred dollars, and on that day he executed and delivered to said bank a promissory note for that amount, which was signed by himself, by Mary A. Sengfelder, his wife, and by Wilson Thompson, his step-father-in-law. On the said seventeenth day of February, 1892, the bank assigned said note to Thompson, before maturity, and in lieu thereof took a note for said amount signed only by said Thompson. Sengfelder, on the same day, executed and delivered to Thompson his note, payable on demand, for the amount due the bank and other indebtedness to Thompson, amounting in all to one thousand nine hundred and ten dollars and forty cents, and, to secure the payment thereof, executed and delivered to Thompson a chattel mortgage upon all the personal property in said stores, particularly describing the same. This mortgage was duly filed on the day of its execution; and about two hours after such filing Thompson demanded payment of the note, and in default thereof took possession of said goods and chattels. After Thompson had taken possession of the goods, the defendant Barnes commenced an action against Sengfelder in a justice's court of Multnomah County, to recover the sum of one hundred and thirty-four dollars, and, at the same time, caused a writ of attachment to be issued and delivered to a deputy sheriff for execution. That night, between ten and eleven o'clock, the officer appointed a person to take charge of the restaurant, and on the next day took possession of said goods and chattels, and thereafter other creditors levied writs of attachment upon the same property. After the officer had executed Barnes' writ, Thomp-

son consented that the help which had been employed by Sengfelder might take some of the attached property in payment of the amounts due them from the latter, and some of the goods were removed from the storerooms for that purpose, but were returned by the officer.

On March 2, 1892, after the defendant Barnes had reduced his attachment claim to a judgment, and was about to sell under execution, P. A. Marquam, the plaintiff herein, exhibited his bill in equity, claiming that the provisions of his lease with Sengfelder created a chattel mortgage on everything in the establishment, and praying a foreclosure for unpaid rent, and for the appointment of a receiver. All parties, except Wilson Thompson, consenting, the property was turned over to the receiver, and by him sold in separate classes, as follows: The furniture and fittings for thirteen hundred dollars; the wines and liquors for a hundred and twenty dollars; and the candies, groceries, and canned goods for forty-four dollars. All the defendant creditors, except Thompson and Barnes, suffered default, while Sengfelder answered, but his claims do not affect the questions raised on this appeal. Marquam claims a first lien for rent on the furniture, liquors, and goods; Thompson claims that his recorded chattel mortgage should be declared a first lien on all the property; while Barnes insists that the Marquam lien is void for uncertainty of description, and that the Thompson mortgage is fraudulent, and was made to hinder and delay the creditors of Sengfelder. These issues were referred to Sanderson Reed, Esq., who reported that Marquam was entitled to a first lien upon the entire fund derived from the sale of the property; that Wilson Thompson was entitled to a second lien on the entire fund; and that the defendant Barnes was entitled to a third lien. A decree having been entered in accordance with this report, the defendant Thompson appeals, insisting that he should have precedence over Marquam, while the defendant

Barnes appeals against both Thompson and Marquam. Modified.

*Frank V. Drake,* for appellant F. C. Barnes, contended that the evidence showed a collusive action between Sengfelder and his father-in-law Thompson, to hinder and defraud the former's creditors; that Thompson's attempted possession under his recorded chattel mortgage was insufficient; that the chattel mortgage was void, at least as to the stock on hand, because the stock was being disposed of in the course of trade.

*William M. Cake* and *Glen O. Holman (Harry M. Cake* on the brief), for appellant Wilson Thompson.

1. It is undisputed that Sengfelder actually owed Thompson over nineteen hundred dollars, and we contend that Thompson had a right to take any and all security that he could obtain. Thompson's chattel mortgage cannot be held fraudulent by reason of the fact that Thompson may have been in a better position than Barnes or any other of his creditors to compel Sengfelder to execute the chattel mortgage, providing, always, that the consideration actually passed. It is no more of a fraud for Thompson to take a chattel mortgage to secure his claim than it is for the attaching creditors to levy an attachment to secure theirs; and the fact that the giving a chattel mortgage incidentally operates to hinder other creditors in collecting their debts does not constitute fraud. The case of *Scott* v. *McDaniel,* 67 Tex. 315, is a case identically in point.

As long as a debtor retains dominion over his property he may make any disposition of it that he chooses, and, though known to be in failing circumstances, he may prefer one creditor to another by a sale or mortgage, either as payment or security: Burrill on Assignments, 218; *Randall* v. *Shaw,* 28 Kan. 419; *Tootle* v. *Colewell,* 30 Kan. 125; *Barley* v. *Mfg. Co* 32 Kan. 73; *Farwell* v. *Nilson,* 133 Ill.

45; *Aulman* v. *Aulman*, 71 Iowa, 124 (60 Am. Rep. 783); *Hill* v. *Stockwell* (Iowa), 23 Fed. 432; *Gilbert* v. *McCorkle*, 11 N. E. 296; *Cory* v. *McKay*, 40 Fed. 858.

The provisions of our statutes relating to fraudulent conveyances are contained in sections 3053, 3059 to 3065, Hill's Code. It is very distinctly provided that a transferee for value will be protected unless he participated in the fraudulent intent of his grantor; so that, in the first place, it must be found that Sengfelder intended to defraud his creditors by executing this chattel mortgage, and then that Thompson not only knew of that intention, but actually participated in the fraud: *Kruse* v. *Prindle*, 8 Or. 158.

2. Passing now to the second point, it appears that the respondent Marquam claims a first lien upon all the property in the Marquam Café by virtue of this clause in his lease, viz: "All personal property, including furniture and household goods of every description, to be at all times liable for rent of said premises. In case of the violation of any of the provisions of this lease by the lessee, the lessor may terminate this lease and hold any property found thereon for any arrears of rent or damages."

*First*—It is conceded that appellant Thompson had no notice of the clause referred to, that respondent Marquam's lease was not filed for record, and that Marquam was not in possession of the property at the time Thompson obtained his chattel mortgage and took possession. In Oregon there is no landlord's statutory lien for rent or right of distress; therefore, any lien claimed must be created by special contract between the landlord and tenant. Marquam must rest his claim for a lien under this clause upon the view that his lien clause constitutes a chattel mortgage upon the property. If this is so, the clause in question is subject to all the rules governing chattel mortgages. Marquam not being in possession, and his chattel mortgage not having been filed for record, section 776, clause 40, of

Hill's Code, creates a presumption of fraud against his mortgage. In order, then, to establish his priority over the chattel mortgage of the appellant Thompson, Marquam must overcome the legal statutory presumption of fraud, which we insist he has not done.

*Second*—Still considering this lien clause to constitute a chattel mortgage, we contend that there is no description of property here which renders the mortgage of any value, and that it is void for uncertainty by reason thereof. The clause in the lease says "all personal property, including household goods of every description." What personal property does the landlord mean? It does not refer to any personal property, but all personal property. There is no clause which describes any personal property, or even attempts to give a description. It is not a question as to whether or not the description is imperfect, but it is the fact that there is no description at all. In all the cases upon this point, the description, where it is decided sufficient, speaks of stock, tools, and chattels, crops, goods, wares, and merchandise, thus .bringing the description to a distinct character or class of personal property; but in this clause it is impossible to determine what personal property the landlord intended to hold: Taylor on Landlord and Tenant, § 424A, p. 505; *Buskirk* v. *Cleveland*, 41 Barb. 610; *Green* v. *Jacobs*, 5 Rich. (S. C.) 280.

*Third.*—Those cases holding clauses in leases to be chattel mortgages are based upon facts showing the intent of the parties to so consider their agreement, and they all show something more than is contained in this lease: Jones on Liens, § 543, *et seq.;* Jones on Chattel Mortgages, § 13; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Merrill* v. *Ressler*, 37 Minn. 82; *Wright* v. *Bircher*, 72 Mo. 179. The clause in this lease is a bare provision for the landlord to hold the property for such arrears of rent as may exist at the termination of the lease. At best, it confers upon the landlord only the right to enter upon the premises and

take sufficient of the property to satisfy any unpaid portion of the rent at the time of taking the property, and cannot be any stronger than a statute giving a right of distress for rent. Under such a statute, it is held that a landlord cannot take the goods from a mortgagee: Taylor on Landlord and Tenant, § 677.

*Fourth.*—We deem the law to be well settled that the landlord has no right to claim a lien under such a clause until he has terminated the lease, which in this case he has refused to do: Wood on Landlord and Tenant, 933; Taylor on Landlord and Tenant, § 504, note 2, and § 573; Jones on Liens, § 550; *Butterfield* v. *Baker*, 5 Pick. 522; *Munsel* v. *Carew*, 2 Cush. 50; *Wilkinson* v. *Ketter*, 69 Ala. 435.

*U. S. Grant Marquam*, for Respondent.

1. The description of the property in this lease is "all personal property in said premises, including furniture and household goods of every description." The premises were described in said lease as storerooms Nos. 125 and 127, Morrison Street, in the Marquam Block, Portland, Oregon. The contention of counsel seems to be that each article must be specified, but the following cases show otherwise: Jones on Chattel Mortgages, 3d Ed. §§ 53 and 54; *Lawrence* v. *Evarts*, 7 Ohio, § 196; *Harding* v. *Colburn*, 12 Met. 333 (46 Am. Dec. 680); *Morse* v. *Pike*, 15 New Hamp. 529; *Burditt* v. *Hunt*, 25 Me. 419 (43 Am. Dec. 289); *Wolfe* v. *Darr*, 24 Me. 104; *Winslow* v. *Merchants Ins. Co.* 4 Metc. 306 (38 Am. Dec. 368); *Smith* v. *McLean*, 24 Iowa, 322; *Rawlins* v. *Kennard*, 26 Neb. 181.

The court said the principle to be deducted from these cases is that any description which will enable third parties to identify the property, aided by inquiries which the mortgage itself indicates and directs, is sufficient.

2. Answering the second point made by the appellant Thompson, we insist that the words of the lease, taken

with the intention of the parties, create a lien.   No technical words are necessary:. Pomeroy's Eq. Jur. § 1237; *Flagg* v. *Mann*, 2 Sumner, 486; *McCaffrey* v. *Woodin*, 65 N. Y. 459 (22 Am. Rep. 644); *Wright* v. *Bircher*, 5 Mo. App. 323; *Fejavary* v. *Broesch*, 52 Iowa, 88 (35 Am. Rep. 261).

MR. JUSTICE MOORE delivered the opinion of the court.

1.   The respondent contends that the clause of the lease above quoted created a lien upon all the personal property on the leased premises, which in equity should be treated as a chattel mortgage.   The said clause does not create a chattel mortgage, because the title to the property was not transferred; nor does it create a pledge, because possession thereof was not delivered.   It was formerly held in this state that a chattel mortgage created only a lien upon personal property: *Chapman* v. *State*, 5 Or. 435; *Knowles* v. *Herbert*, 11 Or. 240 (4 Pac. Rep. 126): but in *Case Threshing Machine Co.* v. *Campbell*, 14 Or. 465 (13 Pac. Rep. 324), this court, by THAYER, J., in our judgment, announced the correct doctrine, and held that a chattel mortgage created more than a lien, and that the mortgagee after condition broken has a right to the thing, which he may maintain by an action in the nature of replevin, to recover it, if, upon demand, delivery thereof be denied.

2.   In a clause of a written agreement which provided that in case of default the parties were authorized " to take immediate possession of all goods, wares, and merchandise, lumber and shingles, and the personal property, now in our possession, and belonging to us," it was held that it was nothing but a naked power, not coupled with any interest, and could not operate to give any right to the property itself until reduced to possession: *Holmes* v. *Hall*, 8 Mich. 66 (77 Am. Dec. 444).   Where a stipulation of a lease provided that " all goods, wares, and merchandise, household furniture, fixtures, or other property which are, or

shall be placed, on said premises, shall be liable, and this lease shall hereby constitute a lien or mortgage on said property to secure the rent due, or to grow due, on this lease," the court held that it did not create a mortgage: *Dalton* v. *Laudahn*, 27 Mich. 529. In a covenant of a lease which contained the following: "And the said parties of the second part hereby pledge and bind all improvements and machinery which they may put on said premises for the payment of the rent aforesaid, and for the due performance of all other covenants herein contained," the court held that it did not create a mortgage, nor purport to mortgage after acquired property; that it was simply a contract for a lien whenever the rent became in arrears, and would constitute a lien in equity. The highest claim which can reasonably be made for the stipulation in the lease in the case at bar is that it created an equitable lien. It is an express executory agreement in writing, whereby the lessee indicated an intention to make the property therein described a security for the rent, which is enforceable against the property in the hands of the lessee, and of his voluntary assignees, purchasers, and encumbrancers with notice: 3 Pom. Eq. Jur. § 1235.

3. The claim being a lien, and creating no property right, nor interest analagous to property, but only a mere personal right and obligation, by means of which the plaintiff is entitled to follow the identical thing, and to enforce the defendant's obligation by a remedy which operates directly upon the thing itself (3 Pomeroy Eq. Jur. § 1234), can this remedy be enforced against one who has acquired the thing without notice of the plaintiff's claim? In the case of *Fejavary* v. *Broesch*, 52 Iowa, 88 (2 N. W. Rep. 963; 35 Am. Rep. 261), SEEVERS, J., in construing a similar clause in a lease which provided that the lessor should have a perpetual lien upon certain personal property, as security for rent, says: "Technically, it is said, the instrument in this case cannot be regarded

as a mortgage, because it does not contain a grant or conveyance of the property. But clearly it creates a lien or equitable charge, and the right of a party to execute it, and its validity, must depend on the same principle as a mortgage." The law which determines the validity of a chattel mortgage must be applied with equal force and like effect to such equitable liens. In *Marks* v. *Miller*, 21 Or. 317 (14 L. R. A. 190; 28 Pac. Rep. 14), it was held that under our statute, when a chattel mortgage has not been filed, a presumption of fraud is created from the retention of possession of the mortgaged property by the mortgagor, which may be rebutted by showing that it was made in good faith, and for a valuable consideration. We think it unnecessary to quote the testimony offered upon this branch of the question, since, in our judgment, it conclusively shows that the lien was created in good faith and for a valuable consideration.

4. Was the specification in the lease of "all personal property in said premises, including furniture and household goods of every description," sufficient to create a lien? Mr. Jones, in his work on Chattel Mortgages, section 54, says: "A description which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property, is sufficient." "The identity of the property is not, in such cases, ascertained by any specific description which distinguishes it from other property of the same kind or species, but by its locality": *Lawrence* v. *Evarts*, 7 Ohio St. 194. "Apparently it seems a more bald description to say 'all my household furniture,' than to enumerate the articles and describe them as 'two dozen of chairs, five tables,' etc.; but in reality the latter will require extrinsic evidence to identify the property as much as the former would": *Harding* v. *Coburn*, 12 Met. 333 (46 Am. Dec. 680). Thus it would appear that the description, "furniture and household goods," was sufficient (*Beach* v. *Derby*, 19 Ill. 617)

and, from their locality, the several articles thereof might be identified by extrinsic evidence; but could the articles described as "all personal property" be identified in this manner from the lease? In *Morrill* v. *Noyes*, 56 Me. 458 (96 Am. Dec. 486), DAVIS, J., clearly enunciates the rules for determining what property should be included in similar descriptions, as follows: "(1) The contract must relate to some particular property described therein, which, though not in existence, must be reasonably certain to come into existence, so that the minds of the parties may be in agreement as to what it is to be; and, if the sale is absolute, what, with reasonable certainty, taking the ordinary contingencies into consideration, is the present value. (2) The vendor or mortgagor must have a present, actual interest in it, or concerning it. As is said in illustrating rule 14 of Bacon's Maxims, 'the law doth not allow of grants, except there be the foundation of an interest in the grantor.' There must be something *in præsenti*, of which the thing *in futuro* is to be the product, or with which it is to be connected, as necessary for its use, or as incident to it, constituting a tangible, existing basis for the contract." Applying these rules to the case at bar, can it be said that the contract or specification in the lease included all the personal property, or that the minds of the lessor and lessee met and agreed upon what it should be? We think it could not; but this would not render the contract void as to such property as could be identified thereby: Jones, Chattel Mortgages, § 74. The word "furniture" means all personal chattels which may contribute to the use or convenience of the householder, or the ornament of the house (Roper, Legacies, 269); and the term "household goods" means every article of a permanent nature which is not consumed in its enjoyment: Roper, Legacies, § 253. The wines, liquors, and groceries are not "furniture," and they cannot be considered as "household goods," and hence the lease did not create any lien thereon.

The return of the receiver shows that the wines and liquors were sold for one hundred and twenty dollars, the groceries and canned goods for forty-three dollars and seventy-five cents, and that the restaurant furniture, and household goods, upon which plaintiff had a lien, brought one thousand three hundred dollars.

5. The defendant Barnes contends that Sengfelder's mortgage to Thompson was fraudulent. It is true that Sengfelder was in failing circumstances, and no doubt Thompson had a better knowledge of this fact than any other creditor; but would this make the transaction fraudulent? If Sengfelder had given his mortgage to the bank to secure the note it held against him, no one would contend that such act would have been fraudulent. A debtor in failing circumstances may prefer a creditor, and appropriate his property to the satisfaction of such creditor's claim: *Kruse* v. *Prindle*, 8 Or. 158; Burrill, Assignments, 218; Bump, Fraudulent Conveyances, 314. When Thompson secured the assignment of the note from the bank he had a *bona fide* claim against Sengfelder, and, since the latter could have preferred the bank, he could, in like manner, have preferred Thompson. When the mortgage was executed and filed, Thompson demanded payment of the note, and, upon default, took immediate possession of the chattels. This gave him a conditional title to the goods, and the possession thereof, for the purpose of foreclosing his mortgage, and such possession was taken before any attachments were levied.

6. Some testimony was taken for the purpose of showing that Sengfelder's mortgage to Thompson was executed for a fraudulent purpose. The officer who levied the writ of attachment for Barnes swears that when he went to the restaurant for that purpose Sengfelder requested him not to close up the place, while the latter swears that such request was made upon the levy of a former writ. Admitting that he made this request at that time, this does not,

in our judgment, necessarily prove that there was any secret trust existing between him and Thompson. He had an interest as mortgagor, and may have entertained a hope that he could adjust the matter. The mortgage given to secure nineteen hundred and ten dollars and forty cents included all Sengfelder's property, but when it was sold by the receiver fourteen hundred and sixty-three dollars and seventy-five cents was the full amount received therefor. This, in our opinion, purges the transaction of every badge of fraud.

7. Sengfelder swears, in relation to the attempt to remove the goods to pay the help, that Geo. W. Hazen, the agent of the bank, who had known Mr. Thompson for several years, told the latter that the law required attaching creditors to pay the help, and that Mr. Thompson was trying to observe Mr. Hazen's advice. The Session Laws of 1891, p. 81, provide that when goods are attached the laborers in defendant's employ shall have a preferred claim, within certain limits as to time and amount; but while the attached goods could not have been appropriated in the summary manner here attempted, we do not think Thompson's act indicated an intent to protect Sengfelder.

There was some testimony taken before the referee which tended to prove that the defendant, Sengfelder, with the knowledge of plaintiff, sold in the ordinary course of business articles of personal property, consisting of stock in trade, but the pleadings having raised no issue upon this question, it was properly held irrelevant.

The decree of the court below will be MODIFIED in accordance with this opinion.