[No. 27664. Department One. May 3, 1940.]

MERCHANTS RATING & ADJUSTING COMPANY *et al.,*
*Appellants,* v. E. M. SKAUG, JR., *et al., Respondents.*[1]

*Chas. W. Gillespie,* for appellants.

*Hamblen, Gilbert & Brooke,* for respondents.

ROBINSON, J.—We are urged by the parties, in giving our opinion in this matter, to answer a broad general question of obvious importance to all who buy, sell, or deal in motor vehicles or who make loans upon the

[1]Reported in 102 P. (2d) 227.

security of motor vehicles or finance motor vehicle transactions. Is chapter 188, Laws of 1937, p. 782, Rem. Rev. Stat., Vol. 7A, § 6312-1 [P. C. § 2696-674, 2696-659] *et seq.*, a title registration act enacted to establish a system something like the Torrens system of registration of land titles, or was it enacted merely to aid state officers in enforcing police regulations as to such vehicles?

It is agreed that the instant case arose out of the following transactions:

On April 15, 1937, fifteen days after chapter 188 went into effect, C. L. Reed, the owner of an automobile, mortgaged it to Merchants Rating & Adjusting Company to secure his indebtedness to that company. The adjusting company filed its mortgage in the office of the auditor of Spokane county, but neither it nor the registered owner applied to the state treasurer, in accordance with § 7 of chapter 188, Laws of 1937, p. 796, Rem. Rev. Stat., Vol. 7A, § 6312-7 [P. C. § 2696-664], for the issuance to the adjusting company of a new certificate of ownership.

In September, 1938, E. M. Skaug, Jr., selected a second-hand automobile from the stock of Henry Stevens, who held in his possession an assigned certificate of ownership showing full title in Naomi Long. In order to make the purchase, Skaug borrowed a sum of money from the First National Bank of Spokane and secured the loan by giving the bank a chattel mortgage. Upon due application to the state treasurer, a certificate of title duly issued, reading as follows:

"STATE OF WASHINGTON—DEPARTMENT OF LICENSES
"CERTIFICATE OF TITLE OF A MOTOR VEHICLE

I, Harry C. Huse, Director of Licenses, hereby certify that it appears from the records in this office that the names shown below are the registered and legal owners of the motor vehicle described hereon and this certificate is issued as evidence of such ownership.

This certificate correctly signed must accompany all applications for re-issue or transfer of ownership.  Keep in a safe place.
"HARRY C. HUSE .
*Director of Licenses*

| "Title No. | Motor No. | Cap'y | Weight | |
|---|---|---|---|---|
| "1st sold | Make | Type | Ser. No. | |
| "B63844 | 6-218341 | | 6 BA-40686 | Date Issued: |
| "9 19 36 | 36 PONT SED | | | Oct. 14, 1938W |
| | | | | LICENSE C 20109 |

"E. M. SKAUG, JR.
"318 S Post                           } Registered Owner
"Spokane, Wash.
"First Nat'l Bank in Spokane } Legal Owner"
"Spokane, Wash.

The car which Skaug purchased proved to be the automobile formerly owned by C. L. Reed and by him mortgaged to the adjusting company.  The adjusting company, having kept the mortgage in good standing, in accordance with the provisions of the chattel mortgage statutes, began a foreclosure by notice and sale in January, 1939.  Skaug and the bank promptly brought this action to remove the matter to the superior court and to restrain the adjusting company from foreclosing its alleged mortgage.

It will be unnecessary to set out the pleadings in detail.  It will be sufficient to say that the parties took issue as follows:  Skaug and the bank claimed they secured a full and certified unencumbered title from Naomi Long without any notice of the adjusting company's alleged mortgage lien.  The adjusting company contended that Skaug and the bank had constructive notice of its mortgage, since it had in all respects complied with Rem. Rev. Stat., §§ 3781, 3782 [P. C. §§ 9760, 9761].  The plaintiffs, without waiving their first contention, further contended that, in any event, they had been wholly without fault, while the adjusting company had been somewhat at fault in not seeing to it that a new certificate was issued when it took its mortgage, thus invoking the equitable rule that, where one of two innocent parties must suffer a loss, due to the wrongful act of a third, the loss should fall upon that

party whose negligence or inattention made it possible for the wrongful act to be done. In answer to that contention, the adjusting company insisted that it was not its duty, but the duty of the mortgagor, to procure the issuance of a new certificate, and cited the statute, Rem. Rev. Stat., Vol. 7A, § 6312-7:

"If, after a certificate of ownership is issued, a mortgage is placed on the vehicle described in the certificate of ownership, the registered owner shall, within ten days thereafter, present his application to the state treasurer, *signed by the mortgagee,* to which shall be attached the certificate of license registration and the certificate of ownership last issued covering said vehicle, which application shall be upon a form provided by the director of licenses and shall be accompanied by a money order, bank draft or certified bank check for a fee of fifty cents (50¢). The state treasurer, upon the receipt of said application, documents and fees, shall affix his receipt for the fee and if he is satisfied that there should be a reissue of said certificates, note such change upon his records and issue to the registered owner a new certificate of license registration and to the mortgagee a new certificate of ownership. . . ." (Italics ours.)

It will be noted, however, that the mortgagee is made a participant in the matter. Note the words "signed by the mortgagee," which we have italicized in quoting the statute. When a mortgage is made, a new certificate must be issued upon an application made by the mortagor and signed by the mortgagee. The mortgagee thus has some responsibility in the matter.

Furthermore, if the mortgagee does not sign such an application within ten days, he knows the statute has not been complied with. If, on the other hand, he does sign an application and does not, within a reasonable period after the expiration of the ten days, receive a new certificate of ownership, he knows that the mortgagor has failed to do his part and that the state

license department has no notice or record of his mortgage.

It is a matter of common knowledge that a large number of new motor vehicles are sold annually. The volume of second-hand sales is much greater, as many motor vehicles are resold again and again. A large percentage are sold on credit, secured by conditional sales contracts or chattel mortgages. It would be very difficult, and sometimes impossible, for a purchaser of a used motor vehicle to safely guard against the purchase of an encumbered car by searching the chattel mortgage and conditional sale registers of the county in which the purchase is made. As distinguished from most articles of personal property of equivalent value, motor vehicles are extremely mobile, and pass from county to county almost in the twinkling of an eye.

There are difficulties apart from those flowing from the extreme mobility of this class of property. If, for example, in the instant case, Skaug and the bank had searched the chattel mortgage filings under the name of Long, and that was the only name they had, they would not have discovered the adjusting company's mortgage, for that was indexed under Reed to the Merchants Rating & Adjusting Company, and the reverse. A purchaser who depended upon a search of county indices to protect himself against encumbrances, would be compelled to ascertain the name and residence of every former owner, and might well have to search the records of a half dozen or more counties.

Because of such difficulties, a number of states have passed title registration statutes. They vary greatly, but the object of a number of them is to provide for a state certificate of title as conclusive as is provided by the Torrens system of land registration. Practically all of our American law journals and law reviews have published articles or other material concerning such

statutes within the past year. Among the most recent is an article in the 48 Yale Law Journal, 1238, entitled: "A Comparison of Land and Motor Vehicle Registration." See, also, 28 California Law Review, 64; 37 Michigan Law Review, 758.

We have examined a number of such statutes. The California, Montana, and Utah statutes are outstanding examples of the class which are intended to be effective title registration acts. By the statutes of these three states, and probably by the statutes of others, the precise difficulty presented by the instant case is wholly obviated, since each of them expressly provides that a chattel mortgage or other lien not registered with the state department of motor vehicles, shall be void as to subsequent purchasers and encumbrancers. Our statute has no such provision, yet it may be that one who takes a mortgage on a motor vehicle and does not see to it that § 6312-7 is complied with, may lose his lien in a contest with a subsequent innocent purchaser or encumbrancer, due to the equitable doctrine upon which respondents rely.

We shall not attempt to answer the broad general question stated in the first paragraph of this opinion. That is not necessary to a decision of the case. Stated in similar general terms, the question actually presented is this: Is the mortgagee of a motor vehicle who files his mortgage in the office of the auditor of the county in which the vehicle is then situated, in accordance with §§ 3781 and 3782 of the code, but who makes no effort to see that § 6312-7 is complied with, in danger of losing his lien? It is our opinion that he is, and that the case before us presents an instance of just such an occurrence. In arriving at this conclusion, it is not necessary, as appellants insist, to hold that § 6312-7 impliedly repeals the constructive notice provisions of § 3782 as to mortgages on motor vehicles. It may

well be that the legislature concluded that, on account of the extreme mobility of that kind of chattels, something above and additional to the mere constructive notice provided by filing the mortgage in the office of a county auditor should be required for the protection of subsequent purchasers and encumbrancers of motor vehicles. At all events, it provided, in the later enactment, that, when a chattel mortgage is given upon a motor vehicle, the owner and mortgagee, acting through application made by the mortgagor and signed by the mortgagee, shall secure a new state registration showing the mortgagor to be the registered owner and the mortgagee to be the legal owner. This requirement was wholly ignored in the transaction between Reed and the adjusting company.

Because of the wrongful act of Reed in passing an apparently unencumbered title to Naomi Long, either the adjusting company or Skaug and the bank must suffer a loss. Neither the adjusting company, on the one hand, nor Skaug and the bank, on the other, participated in that wrongful act, but the adjusting company was responsible, in some measure, for making it possible, and, as is said in *Von Normann v. Woodson,* 182 Wash. 271, 274, 46 P. (2d) 1050, citing *Ross v. Johnson,* 171 Wash. 658, 19 P. (2d) 101:

"Of two persons injured by the wrongful act of a third, he who makes the loss possible must suffer."

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.