[No. 46337. En Banc. September 25, 1980.]

COOPER'S MOBILE HOMES, INC., *Respondent,* v.
DOROTHY MARIE SIMMONS, ET AL,
*Appellants.*

*Davis, Arneil, Dorsey, Kight & Parlette,* by *Jay A. Johnson* and *Robert L. Parlette,* for appellants.

*James M. Danielson,* for respondent.

*Slade Gorton, Attorney General, Thomas L. Boeder, Senior Assistant,* and *Victoria L. Vreeland, Assistant,* amici curiae.

BRACHTENBACH, J.—A mobile home dealer brought suit against a husband and wife for damages due to breach of a contract to buy a mobile home. The defendants counterclaimed for a violation of the Consumer Protection Act and breach of contract. Judgment was entered for the plaintiff dealer on a jury verdict. This appeal, which was certified by the Court of Appeals, Division Three, raises two issues:

1. Must both spouses join to transfer ownership interest in the couple's community property mobile home?

2. Should the question of whether or not Cooper's violated the Consumer Protection Act have been submitted to the jury?

We hold that participation of both spouses is not necessary to transfer ownership interest in a community property mobile home where the title certificate is only in one spouse's name and that under the facts of this case the trial court correctly ruled that no claim for relief under the Consumer Protection Act should have been submitted to the jury.

Mr. and Mrs. Simmons had lived since 1970 in a small 1969 Concord mobile home purchased with community property funds. They lived in the home in a mobile home park, where they rented a lot on a month–to–month tenancy. Title to the mobile home had originally been in Mr. Simmons' name. However, several years before the activities in issue here, title had been transferred to Mrs. Simmons. Mr. Simmons testified at trial that this action had been taken on the advice of the family physician, who advised him that the transfer would help Mrs. Simmons feel more secure and alleviate emotional problems. Mr. Simmons testified that he did not intend the title change to effect a gift of the home to Mrs. Simmons as her separate property and that he agreed to the transfer because he

knew that the home would remain community property regardless of which spouse's name it was in.

In January 1977, Mr. Simmons contacted Cooper's and requested information regarding a trade–in of their home for a larger new mobile home. Both Mr. and Mrs. Simmons visited Cooper's individually on several occasions. On January 29, 1977, Mrs. Simmons went to Cooper's, without her spouse's knowledge or consent, signed several documents regarding purchase of a new mobile home, including a title certificate in her name to the Concord which she signed over as down payment on a new mobile home. A salesman of Cooper's in response to Mrs. Simmons' question, told her that her signature alone was sufficient to transfer title to the mobile home.

Later in the day, upon being told by his wife of the transaction, Mr. Simmons violently objected to the agreement and transfer of their mobile home and informed his wife that he would not go along with the deal and that it therefore had to be rescinded. Mrs. Simmons then informed Cooper's of her husband's objections and began a long series of efforts to cancel the agreement. The transaction was never performed and Cooper's later sold to another buyer the new mobile home originally contracted for by Mrs. Simmons. The Simmons have subsequently divorced and Mrs. Simmons alone brings this appeal.

As a defense to Cooper's action, Mrs. Simmons argues that her spouse's joinder was necessary to transfer ownership in their community property mobile home, used by them as a dwelling in a mobile home park, because the home must be characterized as either real property or household goods. RCW 26.16.030. In addition, Mrs. Simmons asserts a counterclaim under the Consumer Protection Act.

I

JOINDER IN TRANSFER OF COMMUNITY MOBILE HOME

As a general rule, spouses have equal management power over community property and can individually dispose of it

just as they can transfer their own separate property. RCW 26.16.030. However, exceptions to that general rule require the joinder of both spouses in the transfer and, in some cases, acquisition of certain types of property. RCW 26.16-.030. The wife asserts that her husband's failure to join in the transfer of their mobile home voids this transaction.

RCW 46.12.290 states that the provisions for vehicle certificates of ownership, RCW 46.12, shall apply to the transfer of mobile homes, which must therefore be issued certificates of title much like those issued for motor vehicles. Under RCW 46.12.101, transfer of ownership in a motor vehicle is "perfected" by execution of an assignment to the transferee by the owner. "[T]he name and address of the registered owner and legal owner" must appear on the face of the certificate. RCW 46.12.050. Cooper's therefore asserts a right to rely on Mrs. Simmons' ownership as set out on the certificate in her name signed over by her.

The transfer of the mobile home was executed in compliance with the statute. If Cooper's is a bona fide purchaser for value, of course, it takes title to the mobile home free of any interest that was not represented on the title certificate. *Merchants Rating & Adjusting Co. v. Skaug,* 4 Wn.2d 46, 102 P.2d 227 (1940). But we need not decide whether Cooper's was a bona fide purchaser because, under the community property statutes, the wife had full power to transfer the community interest in the mobile home.

■ Mrs. Simmons asserts that the general provision of RCW 26.16.030, which gives each spouse equal management authority over community property, does not apply because the mobile home is either real property or a household good, requiring the joinder of both spouses to transfer ownership under RCW 26.16.030(3), (5).

Although there are situations where a mobile home which is attached to land is treated as a part of the real estate, RCW 84.04.090, *State v. Work,* 75 Wn.2d 204, 449 P.2d 806 (1969), *Pedrini v. Mid–City Trailer Depot, Inc.,* 1 Wn.

App. 56, 60, 459 P.2d 76 (1969), this treatment only pertains where the law is primarily directed to the land underneath the mobile home. In this case, the Simmons did not own the land, and the mobile home was to be moved off the land when sold. The mobile home therefore cannot be characterized as real property for the purpose of joinder under RCW 26.16.030(3). If a mobile home is to be sold along with the real estate to which it is attached, the requirement of joinder in the sale of community real property will adequately protect an unwilling spouse.

As to household goods, RCW 26.16.030(5) provides:

> Neither spouse shall create a security interest . . . or sell, community household goods, furnishings, or appliances unless the other spouse joins in executing the security agreement or bill of sale, if any.

We have not yet had the opportunity to consider the types of goods included in this description; nor do any reported decisions in this state define the term or the joinder necessary to divest community interest. No comparable provision in another community property state provides an appropriate analogy.

Mrs. Simmons urges this court to adopt an interpretation of RCW 26.16.030(5) that would include a mobile home used as the principal residence, the "household itself," within the goods joinder requirement. This would seem to be consistent with the spirit of the provision. The legislature apparently intended to ensure that items necessary to the family home would only be disposable with mutual consent. It seems quite inconsistent that Mrs. Simmons alone should be able to transfer the home itself when she did not have the power to sell the bed and refrigerator inside.

The only manner in which RCW 26.16.030(5) can require joinder of the spouse in this case is if a mobile home is included within the statutory phrase "household goods."

No case has been cited nor have we found any which would define "household goods" broadly enough to include a mobile home. The general definition of the phrase is that

which is of a permanent nature, *i.e.,* not consumed in use, which is used by a person *for* his house. *Smith v. Findley,* 34 Kan. 316, 8 P. 871 (1885); *Marquam v. Sengfelder,* 24 Ore. 2, 32 P. 676 (1893). Alternatively, household goods are those articles with which a residence is equipped, other than fixtures. *Kramer v. Beebe,* 186 Ind. 349, 115 N.E. 83 (1917). "The term 'household goods' . . . includes every-thing *about* the house that is usually held and enjoyed *therewith . . .*" (Italics ours.) *Lawwill v. Lawwill,* 21 Ariz. App. 75, 77–78, 515 P.2d 900 (1973).

There simply is not authority or room for rational, rea-sonable interpretation to hold that mobile homes are household goods.

■ In addition, the legislature has established a title certificate system for the protection of owners of mobile homes. The interests of spouses can be adequately pro-tected by adding the second spouse's name to the title cer-tificate. To hold that a mobile home can be a household good under RCW 26.16.030(5) would seriously interfere with the protection afforded to transferees under the title certificate system. At the least, the statutes should be coor-dinated. The legislature cannot have intended such a dis-ruptive anomaly within that system.

Although we feel that Mr. Simmons deserves the same protections under the community property statutes as that received by spouses who live in conventional houses, this change in the law must come from the legislature. We can-not view the suggested interpretation as conforming to the intent of the legislature under the existing statutes because this would be inconsistent with other important statutory objectives.

It is true that we should not so interpret a statute as to reach an absurd result (*Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975)), but neither should we make an absurd interpretation to reach a desired result. To engraft such an interpretation upon the statute would be to supply a perceived deficiency under the guise of interpretation. That is beyond our power.

Because none of the exceptions of the statute apply, Mrs. Simmons had the power to, and did, transfer the community interest in the mobile home.

## II
### CLAIM UNDER CONSUMER PROTECTION ACT

A trial court is only compelled to submit instructions to a jury on a theory of the case where there is substantial evidence to support the claim. *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 866, 567 P.2d 218 (1977); *Hester v. Watson,* 74 Wn.2d 924, 448 P.2d 320 (1968). Under the Consumer Protection Act, four essential elements are necessary to support a private cause of action: (1) the act or practice must be unfair or deceptive, (2) it must occur in trade or commerce, (3) there must be a resultant injury, and (4) the acts complained of must affect the public interest such that the Attorney General would have authority to bring an action. RCW 19.86.020, 19.86.090; *Salois v. Mutual of Omaha Ins. Co.,* 90 Wn.2d 355, 581 P.2d 1349 (1978); Comment, *Private Suits Under Washington's Consumer Protection Act: The Public Interest Requirement,* 54 Wash. L. Rev. 795, 796 (1979).

Mrs. Simmons asserts that there were seven different acts of the respondent which were unfair or deceptive and which caused her injury. We do not find substantial evidence in the record to support any of these claims. (1) The record shows that Mr. Cooper represented that the mobile home would *fit* in the lot, not that the lot owner would have no objection. There is no evidence that his statements were deceptive. (2) Cooper's mere refusal to allow rescission of the contract, without more, is not unfair. (3) Although it appears from the testimony that Mrs. Simmons simply did not know which *day* the mobile home would be moved, there is no evidence that the alleged moving without her knowledge or consent was unfair or caused her any injury. (4) Mr. and Mrs. Simmons each testified that they thought that the delivered mobile home was not the same one that they had seen on the lot. But the serial

number on the executed contract matched that on the home, and the Simmons did not show that the minor differences that they claimed to have found caused them any injury. (5) The Simmons claimed that there were defects in the delivered home. But since Cooper's offered to repair them, this is not unfair. (6) The Simmons claimed that Cooper's failure to notify them when it resold the home was unfair. But Cooper's had notified them that it intended to resell the home. That is all that is required by RCW 62A.2–706(3). (7) Because Mrs. Simmons had the power to sell the trade–in mobile home, Cooper's refusal to relinquish its claim to that home was not unfair.

Because there was not substantial evidence to support each of the four elements required under the Consumer Protection Act for any of the seven allegations, the trial court properly declined to instruct the jury on this theory.

Judgment affirmed.

ROSELLINI, STAFFORD, WRIGHT, HICKS, and WILLIAMS, JJ., concur.

HOROWITZ, J. (dissenting)—I agree with the majority's conclusion that the Consumer Protection Act is inapplicable to the facts in this case and in the majority's conclusion that, for purposes of RCW 26.16.030(3), a mobile home is not real property requiring joinder of both spouses to transfer community property ownership interest. I must dissent, however, from the majority's interpretation of RCW 26.16.030(5) and its conclusion that the Simmons' mobile home is not a "household good" requiring joinder of both spouses to transfer community property ownership interest. As discussed below, classification of the mobile home as a "household good" within the provisions of RCW 26.16.030(5) fulfills the intent of the legislature in enacting this statute. Moreover, the fact that the title certificate named only Mrs. Simmons as the registered owner does not prevent proof of the community character of the property. For these reasons I dissent.

## I

The majority treats the term "household goods" as if the term has a fixed, mandatory and inexorable meaning that prevents classification of a mobile home as a household good within the meaning of RCW 26.16.030(5). The term does not have such an established meaning consistent with only one characterization of a particular item. The meaning of a term in a statute must depend on the context in which it is used:

> [I]t is the contextual implications, whether indentical [*sic*] with literalness or the equity of the statute or with neither, that lie at the bottom of every problem of textual interpretation. Once found by theories of statutory interpretation that are properly worked out, properly understood, and carefully applied, it is the best possible indication of legislative intention, whatever one wishes to call it. Thus any meaning, whether it be called equitable, spiritual or literal which best indicates the context of the whole statute is the proper meaning.

de Sloovere, *Textual Interpretation of Statutes,* 11 N.Y.U.L.Q. Rev. 538, 544 (1934); *see also Retail Store Employees Local 1001 v. Washington Surveying & Rating Bureau,* 87 Wn.2d 887, 896, 558 P.2d 215 (1976) ("The word does not have a fixed meaning and is not defined in the statute. In such a case, therefore, regard must be had to the statutory object sought to be accomplished by the use of the word . . . and the context and subject matter in which it is used."). The legislature in this case did not define the term "household goods" nor is it used in the statute in a manner which would preclude classification of a mobile home as a household good if to do so would best carry out the intent of the provision.

For instance, in this case the legislative purpose clearly appears from the following analysis.

In materials placed by the legislature in the statute archives pursuant to RCW 40.04 as part of the legislative history of the 1972 bill ultimately codified as RCW 26.16-.030(5), Laws of 1972, 1st Ex. Sess., ch. 108, § 3, supporters of the provision state that the purpose of the bill is to

"ensure that *family home* and real estate holdings and *items necessary to the family home* would be disposed of only on the basis of mutual consent of both spouses," (italics mine), and that the new provision would mean that "*family home holdings* can be disposed of on the basis of mutual consent of both spouses," (italics mine).

This court's primary concern has always been to effectuate legislative intent. *Gross v. Lynnwood,* 90 Wn.2d 395, 583 P.2d 1197 (1978); *Anderson v. Morris,* 87 Wn.2d 706, 558 P.2d 155 (1976). When interpreting an unclear or ambiguous statute, as we must here, included within the legislation's ambit must be those things and circumstances falling within the spirit of the law, even if it can be said that standing alone they are not within the letter of the provision. *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441, 536 P.2d 157 (1976); *In re Estate of Donnelly,* 81 Wn.2d 430, 502 P.2d 1163 (1972). "[T]he underlying purpose inherent in the function of judicial interpretation of statutory enactments is to *effectuate the objective* —often referred to as the intent—of the legislature." (Italics mine.) *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 420, 486 P.2d 1080 (1971). This can, as in *Murphy, supra,* entail reading out of the operation of the statute things which appear to be explicitly included.

"[I]ntent of statutes is more to be regarded and pursued than the precise letter of them . . ." *Eyston v. Studd,* 75 Eng. Rep. 688, 694, 2 Plowden 460 (1574), quoted in *Murphy, supra* at 420. *See State v. (1972) Dan J. Evans Campaign Comm.,* 86 Wn.2d 503, 508–09, 546 P.2d 75 (1976) (term "political committee" defined to include some individuals and to exclude some committees); *In re Estate of Donnelly, supra* at 436–37 (adopted child cannot inherit intestate from natural grandparents even though falling within the literal interpretation of the intestate succession statute); *Jordan v. O'Brien,* 79 Wn.2d 406, 409–10, 486 P.2d 290 (1971) (term "year" does not necessarily mean "a period of twelve months" for purposes of acquiring pension benefits); *Gaines v. Department of Labor & Indus.,* 1 Wn.

App. 547, 551–52, 463 P.2d 269 (1969) (term "findings" defined to include only "findings of ultimate fact"); *Silver v. Ladd,* 74 U.S. 219 (7 Wall), 19 L. Ed. 138 (1868) (statute granting public land to "single men" extended to widow seeking land grant); *Doubleday v. Stockbridge,* 109 Vt. 167, 194 A. 462 (1937) (term "owner or possessor" interpreted to include lessee); *Gremillion v. Louisiana Pub. Serv. Comm'n,* 186 La. 295, 172 So. 163 (1937) (statute imposing expenses on "corporations" applied to individual). As can be seen from these illustrative cited cases, the court's duty to interpret statutes in a manner consistent with the legislature's intent can also require us to extend the act to the circumstances in which the application of the statute will serve the spirit of the law:

> [E]quitable interpretation has provided an avenue for applying a rule of reason to counteract excessive literalism based on assumptions of inherent meanings in language. Rather than subverting legislative supremacy, it has served as another useful aid . . . for discovering either the legislature's intent or its communicated meaning.

2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 54.02, at 353 (4th ed. 1973).

The majority has made the unwarranted assumption that the term "household goods" has an "inherent meaning" that excludes mobile homes.

The cases cited by the majority in support of this restrictive statutory interpretation are not applicable to the analysis necessary here. Only one of the cases, *Kramer v. Beebe,* 186 Ind. 349, 115 N.E. 83 (1917), considers the use of the term "household goods" in a statute, and that case only considers the type of property exempt from levy for payment of delinquent taxes. The discussion of the term was unnecessary to the court's conclusion. The other cases are clearly distinguishable both because they did not consider statutes containing the term "household goods" and because they did not consider the meaning of the term with regard to a piece of property like a mobile home. *Smith v.*

*Findley,* 34 Kan. 316, 8 P. 871 (1885) merely declared that foodstuffs were not "household goods" which would qualify for a lower railroad cartage rate. *Marquam v. Sengfelder,* 24 Ore. 2, 32 P. 676 (1893) again refused to enforce against foodstuffs a lien on "household goods" included in a written lease agreement. *Lawwill v. Lawwill,* 21 Ariz. App. 75, 515 P.2d 900 (1973) considered whether a painting was a "household good" within the meaning of a couple's separation agreement in contemplation of divorce.

The majority's conclusion that a mobile home cannot be a household good based on this authority is unsupportable. In effectuating legislative intent the courts have rightfully refused to so rigidly define terms with far more precise common meanings. *Jordan v. O'Brien, supra; Silver v. Ladd, supra.* Where a word or phrase in a statute does not have a fixed meaning and is not defined in the statute, we can interpret that language only with regard to the object sought to be accomplished by the legislation and by the context in which it is used. *Retail Store Employees Local 1001 v. Washington Surveying & Rating Bureau, supra.* In this case, the court, with the intent of the legislature in mind, need only construe the ambiguous undefined words "household goods" in the context of the statute in which the term is found. Bearing in mind our duty to effectuate the legislature's intent, it is clear the Simmons' mobile home should have been characterized as a household good for purposes of the joinder requirements of RCW 26.16-.030(5).

This becomes apparent upon analysis of the practical consequences of failing to characterize the Simmons' home as a household good. In this case, Mrs. Simmons had also purported to sell to Cooper's a bed and a refrigerator in the mobile home. It is clear that the bed is a "furnishing" and the refrigerator an "appliance" within the provisions of RCW 26.16.030(5), and clearly could not be sold without Mr. Simmons' joinder. But if their mobile home is not defined as a "household good," Mrs. Simmons alone could sign away the marital home even though she could not

transfer two relatively insignificant items within it. Such a result is inconsistent with the intent of the act. The statute should not be interpreted to reach such an absurd result. *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975). It also violates the "golden rule" of statutory interpretation:

> [The] unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.

2A C. Sands, *Sutherland's Statutes and Statutory Construction* § 45.12, at 37 (4th Ed. 1973). This alone is reason to reject the majority's construction of RCW 26.16.030(5) in favor of characterization of the Simmons' mobile home as a household good.

The suggested interpretation is further justified by a consideration of the growth of mobile homes into an increasingly important form of shelter. Over 90,000 mobile homes are occupied as dwellings in this state. Bureau of the Census information reveals that in four representative Washington towns selected for analysis from throughout the state, the percentage of housing provided by mobile homes has risen from just over 3 percent in 1970 to 11 percent in 1979.

This court has already acknowledged the inappropriateness of treating the mobile home as a family dwelling any differently than any other housing. *State v. Work,* 75 Wn.2d 204, 449 P.2d 806 (1969). Declaring mobile homes to be household goods within the joinder requirements of RCW 26.16.030(5) would merely give spouses living in mobile homes the same protection afforded those living in more traditional dwellings by RCW 26.16.030(3), a result within the intent of the legislature in enacting RCW 26.16-.030(5). There is nothing absurd about such an interpretation.

## II

Because the trial court incorrectly refused to characterize the Simmons' mobile home as a household good within the joinder requirements of RCW 26.16.030(5), the question of

whether Mr. Simmons' joinder in the transaction was effected by his authorization or ratification of Mrs. Simmons' act, or his estoppel from asserting his failure to join, was not reached below. The majority's conclusion that joinder was not required made it unnecessary for the majority to examine this issue. However, to complete the analysis of the appropriate outcome of this case, I review the facts elicited at trial. This examination reveals that under no circumstances could the jury have found joinder in Mrs. Simmons' actions.

As has long been the case in real estate transactions requiring joinder of both spouses, a spouse's acquiescence in the transfer may be shown not only by explicit approval of the transaction, but by prior authorization or subsequent ratification of the acting spouse's transfer. The spouse may be estopped from asserting his or her nonjoinder. "Participation" in the transaction is all that is required. *See* Cross, *Equality for Spouses in Washington Community Property Law—1972 Statutory Changes,* 48 Wash. L. Rev. 527, 548 (1973).

However, there was no evidence of such participation by Mr. Simmons in the transaction under the circumstances described in the majority opinion. Although there was evidence that Mr. Simmons prior to the transfer authorized his wife's selection of a *new* mobile home style, there was no evidence he authorized her to negotiate the trade–in of their old home. Indeed, the testimony showed that Cooper's employees knew Mr. Simmons wished to negotiate the value of their old mobile home in trade.

Rather than ratifying the transaction, Mr. Simmons immediately upon hearing of the agreement voiced his displeasure and unwillingness to participate in the transaction. Mrs. Simmons promptly relayed his failure to ratify to Cooper's.

Finally, Mr. Simmons was not estopped from asserting his nonparticipation by his transfer of the mobile home to his wife's name several years before the transaction in question. Cooper's had no right to believe that either

spouse owned the mobile home as separate property because of the existence of title in either spouse's name. If the transfer, of which Cooper's was unaware when this transaction occurred, had not taken place, Cooper's would have had no right to rely on Mr. Simmons' name on the title had he purported to transfer ownership alone. *See* Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 787 (1974), which points out the practice of title examiners and insurers to assume that property is community property until it has been affirmatively demonstrated that the individual whose name appears on the title, acting alone, can transfer ownership.

The majority's reliance on the provisions for mobile home title certificates in RCW 46.12 as justification for the refusal to require joinder to transfer ownership interest is misplaced. RCW 46.12 does not provide the exclusive method of transferring title to the articles subject to registration under its provisions. Certificates of title are issued to help prevent theft and resale of highly mobile goods by insuring that the rightful owner's acquiescence to transfer is obtained. However, even in the case of automobiles, registration or issuance of title in an individual's name does not preclude proof of the true ownership interest of another person. "Registration and title certificates are only prima facie evidence of ownership, which evidence is rebuttable." *Crawford v. Welch,* 8 Wn. App. 663, 664, 508 P.2d 1039 (1973), citing *Junkin v. Anderson,* 12 Wn.2d 58, 120 P.2d 548, 123 P.2d 759 (1941); *Gams v. Oberholtzer,* 50 Wn.2d 174, 310 P.2d 240 (1957).

Particularly in this case, where Cooper's was aware of the Simmons' marital relationship and of the husband's desire and intention to negotiate the trade–in, and could not be considered a "bona fide purchaser" with no notice of a possible defense to Mrs. Simmons' transfer, the existence of a community property right could preclude sale by one spouse acting alone and overcome the provisions of the certification act. *See Junkin, supra; Hartford v. Stout,* 102

Wash. 241, 172 P. 1168 (1918); *Kimball v. Donohue,* 124 Wash. 505, 214 P. 1045, 217 P. 37 (1923).

A mobile home used as a married couple's family home should be characterized as a household good for purposes of RCW 26.16.030(5). The trial court's holding to the contrary in this case should have been reversed. Since the jury could not have found sufficient participation by Mr. Simmons to constitute joinder in the purported transfer of their community property mobile home, the transfer should have been considered void and the purchase agreement relying on it could not have survived. Cooper's Mobile Homes should have been ordered to return to Mrs. Simmons the title certificate to the 1969 Concord mobile home.

I dissent.

UTTER, C.J., and DOLLIVER, J., concur with HOROWITZ, J.

Reconsideration denied November 3, 1980.