THE NATIONAL CITY BANK OF NEW YORK, A CORPORA-
TION, PLAINTIFF-RESPONDENT, v. DANTE DEL SORDO
AND BEN SICILIANO, INDIVIDUALLY AND TRADING
AS MIAMI MOTORS, DEFENDANTS-APPELLANTS.

Argued October 25, 1954—Decided November 29, 1954.

*Mr. Philip Barbash* argued the cause for the appellants.

*Mr. Louis Kraemer* argued the cause for the respondent (*Messrs. Furst, Furst & Feldman* and *Mr. Irving J. Rosenberg*, attorneys).

The opinion of the court was delivered by

BURLING, J.   This is a civil action in which the plaintiff, the National City Bank of New York, a corporation (hereinafter called the plaintiff), sought to recover possession of an automobile or in the alternative to recover judgment for its value, from Dante Del Sordo and Ben Siciliano, individually and trading as Miami Motors, of Newark, New Jersey (hereinafter called the defendants), under a chattel mortgage made by a Robert William Conway, of Newark, New Jersey (hereinafter called Conway).   The action was instituted in the Law Division of the Superior Court. Summary judgment was entered therein in favor of the plaintiff and the defendants appealed to the Superior Court, Appellate Division.   Prior to hearing there the appeal was certified to this court on our own motion.

Conway, on September 26, 1952, made a chattel mortgage on a used 1950 automobile to the plaintiff as security for the payment of a loan of $2,250, with interest, which was to be paid to the plaintiff in equal monthly installments of

$68.15. The plaintiff caused this chattel mortgage to be recorded in the office of the Register of Deeds of Essex County, New Jersey, on September 27, 1952, but made no attempt to comply with the requirements of *R. S.* 39:10–11, as am. by *L.* 1939, *c.* 270, *sec.* 2; *L.* 1946, *c.* 136, *sec.* 7, and *L.* 1951, *c.* 334, *sec.* 1. The statutory provision adverted to, namely *R. S.* 39:10–11, as amended, *supra,* reads as follows:

"The purchaser of a motor vehicle in this State shall, within ten days after its purchase, submit to the director evidence of purchase. Upon presentation of the certificate of origin, or certificate of ownership, or bill of sale issued prior to the effective date of this amendment, with proper assignment and certification of the seller, to the director, record of the transaction shall be made and filed. Certificate of ownership will be issued by the director and delivered to the purchaser in the case of an absolute sale, and the director shall collect a fee of one dollar and fifty cents ($1.50) for the issuance and filing thereof.

In the case of a sale other than absolute, copy of the certificate of ownership recording the encumbrance shall be delivered to the purchaser, and the director shall collect a fee of two dollars ($2.00) for the issuance and filing thereof.

Whenever a chattel mortgage is placed on a motor vehicle it shall be recorded in the county as provided in sections 46:28–5 and 46:28–7 of the Revised Statutes, and shall also, unless it is given to secure an agricultural loan, be presented to the director with a certificate of ownership and a statement of the encumbrance on a form prescribed by the director; otherwise there shall be the same result of failure to record as provided in section 46:28–5 of the Revised Statutes. The director shall issue a new certificate of ownership recording the encumbrance thereon and shall collect a fee of two dollars ($2.00) for the issuance and filing thereof.

In addition to the issuing and filing fee, there shall be paid to the director a fee of twenty five cents ($0.25) for notice of satisfaction of the lien or encumbrance on the record or abstract of contract, where the motor vehicle is subject to a lien or encumbrance as provided in section 39:10–14.

*Provided, however,* when any dealer licensed under the provisions of this act is the purchaser of a motor vehicle in this State, he shall, within ten days after its purchase, submit to the director the evidence of purchase. Upon presentation of the certificate of ownership with proper assignment and certification of the seller to the director, a record of the transaction shall be made and filed. Certificate of ownership will be issued by the director and delivered to such purchaser and the director shall collect a fee of fifty cents ($0.50) for the issuing and filing thereof.

Any purchaser of a motor vehicle who fails to comply with the provisions of this section shall pay to the director a penalty of five dollars ($5.00) plus the issuing and filing fee."

Note: The recent further amendment, *L.* 1954, *c.* 207, *sec.* 1, is not directly involved in this case.

The plaintiff's noncompliance with *R. S.* 39:10–11, as amended, *supra*, was its failure to present the chattel mortgage with the certificate of ownership to the Director of Motor Vehicles of New Jersey for recording, filing and issuance of a new certificate of ownership recording the encumbrance thereon.

Conway, having retained the certificate of ownership, on May 19 or 20, 1953 sold the automobile in question to the defendants and assigned to them the certificate of ownership therefor (which, as above indicated, by virtue of the plaintiff's failure to comply with *R. S.* 39:10–11, as amended, *supra*, contained no notice of the plaintiff's chattel mortgage).

The chattel mortgage being in default, the plaintiff on June 25, 1953 made a demand in writing on the defendants for possession of the automobile. Upon the defendants' refusal to comply with the demand, the plaintiff instituted this action by complaint. The defendants filed an answer asserting that as to them the chattel mortgage was void for failure to have a proper affidavit of consideration annexed thereto and for failure of the plaintiff to record the chattel mortgage with the Director of Motor Vehicles as required by *R. S.* 39:10–11, as amended, *supra,* and *R. S.* 46:28–5. (*R. S.* 46:28–5, *supra*, insofar as pertinent hereto declares a chattel mortgage to be void as to subsequent purchasers in good faith in the event of noncompliance with the pertinent statute.) The Superior Court, Law Division, conceiving *R. S.* 39:10–11, as amended, *supra*, to be unconstitutional, rendered summary judgment for the plaintiff. This appeal is from that summary judgment.

The questions involved on this appeal include: (a) whether the affidavit of consideration made by an assistant cashier of the plaintiff corporation was valid; (b) whether there was an invalidating discrepancy between the amount to be paid

as stated in the chattel mortgage and the amount stated to be due in the affidavit of consideration; (c) whether *R. S.* 39:10–11, as amended, *supra*, is constitutional; and (d) whether the plaintiff's rights were preserved to it in despite of *R. S.* 39:10–11, as amended, *supra*, by virtue of the decision of the Superior Court, Law Division, rendered in another matter between different parties on November 21, 1952, that this statutory provision was unconstitutional, *viz.*, *Sayre & Fisher Brick Co. v. Dearden*, 23 *N. J. Super.* 453 (*Law Div.* 1952).

I

The first question involved is whether the affidavit of consideration annexed to the plaintiff's chattel mortgage was validly executed by the corporation. The officer who made the affidavit of consideration was an assistant cashier, Thomas C. Houts, executive head of the Veterans Loan Division of the plaintiff's Personal Credit Department. This officer was in complete charge of and had full responsibility over the granting of all veterans' loans and the records maintained in connection therewith, and the loan to Conway was a veterans' loan.

We are of the opinion that the corporate affidavit was duly and validly made by the plaintiff's assistant cashier, and that he had adequate knowledge of the transaction. In this respect the decision of the former Court of Errors and Appeals in *American Soda Fountain Co. v. Stolzenbach*, 75 *N. J. L.* 721 (*E. & A.* 1908), is dispositive.

II

The questions involved relating to the amounts stated to be due in the chattel mortgage and in the affidavit of consideration, namely, the alleged discrepancy between the statements of amount due, are without merit. The chattel mortgage was conditioned upon the payment of the principal sum of $2,250 in 36 installments of $68.15 per month, which payments total $2,453.40. The affidavit of consideration re-

fers to the loan in the principal sum of $2,250, and states the amount due as $2,250 "besides lawful interest thereon from the 26th day of September, 1952." The difference of $203.40 obviously represents interest over the three-year period of the loan, within the interest rate charged by the plaintiff (and referred to in various places in the chattel mortgage), namely, 5.7%. Under these circumstances there is no invalidating discrepancy in the statements of amounts due. *McDonald v. H. B. McDonald Const. Co., Inc.*, 117 *N. J. Eq.* 181, 183 (*Ch.* 1934). *Cf. Bruck v. The Credit Corp.*, 3 *N. J.* 401, 411 (1950).

## III

There remain in this appeal questions involved relating to constitutionality of *R. S.* 39:10–11, as amended, *supra*, and the rights of the parties in connection therewith.

## A

■ The record discloses failure of the plaintiff to comply with the intent of *R. R.* 4:37–2 by giving notice of its attack on the constitutionality of *R. S.* 39:10–11, *supra*, to the Attorney-General.

The issue of unconstitutionality was not asserted in the pleadings and appears to have been raised in the first instance at the oral argument on the motions for summary judgment in the Law Division. This circumstance required the trial judge to invoke *R. R.* 4:37–2, *supra*, which provides:

"* * * the court shall require notice to be given the Attorney General of the State; and the State shall upon timely application be permitted to intervene * * *."

However, it does not appear that this was done. The issue of constitutionality having been heard and determined at the trial level, in the interests of justice we deemed it unreasonable to require the defendants to remedy the failure of the plaintiff and the trial court in this respect. In exercise of our original jurisdiction, prior to argument of the defend-

ants' appeal, we ordered notice to the Attorney-General. The Attorney-General made no application to intervene. This is the first time the constitutionality of *R. S.* 39:10–11 as amended, *supra*, has been before us, and in view of the decisions of the Superior Court, Law Division, in this case and in the *Sayre & Fisher Brick Co.* case, *supra*, the question is of general public importance. Under these circumstances the question of constitutionality will be considered.

## B

The statutory scheme exhibited by *chapter* 10 of *Title* 39 of the *Revised Statutes*, as pertinent hereto, provides a method of establishing a complete record of ownership of title to motor vehicles in this State. As to new motor vehicles the manufacturer is required to give the local dealer (or person purchasing a new motor vehicle direct from the manufacturer) a certificate of origin. No person may bring a new motor vehicle into New Jersey without such a certificate. *R. S.* 39:10–8 as amended by *L.* 1946, *c.* 136, *sec.* 4; *L.* 1949, *c.* 235, *sec.* 3. The manufacturer or his agent or dealer assigns the certificate of origin to the purchaser (either absolute or subject to contract). *R. S.* 39:10–8 as amended, *supra.* The purchaser submits this assigned certificate to the Director of Motor Vehicles who issues a certificate of ownership (if an absolute sale, to the purchaser under *R. S.* 39:10–11, as amended, *supra*; if a sale other than absolute, to the conditional sale vendor or the chatel mortgagee, *R. S.* 39:10–10, as amended by *L.* 1939, *c.* 270, *sec.* 1; *L.* 1946, *c.* 136, *sec.* 6; *L.* 1951, *c.* 295, *sec.* 1). If the sale is other than absolute the Director also issues a "copy of the certificate of ownership recording the encumbrance" to the purchaser. *R. S.* 39:10–11, as amended, *supra.* With respect to subsequent sale or sales of a motor vehicle, the certificate of ownership must be assigned and delivered if absolute, to the purchaser; if other than absolute, subject to the contract. *R. S.* 39:10–9, as amended by *L.* 1946, *c.* 136, *sec.* 5. Recording of the encumbrance with the Director and issuance of new

certificates of ownership to the encumbrancer and the owner by the Director is again required by *R. S.* 39:10–11, as amended, *supra*. Where a chattel mortgage is placed on a motor vehicle by an owner, the owner's certificate of ownership must be submitted by the mortgagee, with the chattel mortgage, to the Director of Motor Vehicles for filing, recording and issuance of a new certificate of ownership (to the mortgagee) and a copy of the certificate of ownership recording the encumbrance (to the owner-mortgagor). *R. S.* 39:10–11, as amended, *supra*. The certificate of ownership (as distinguished from the above referred to purchaser's, or mortgagor's copy thereof) is not delivered to the purchaser, or mortgagor, until the obligation is satisfied. *R. S.* 39:10–10, as amended, *supra*. The evidence of purchase, including certificates of origin or ownership filed with the Director under the foregoing provisions of the statute, are retained on file by the Director and destroyed when the vehicle described therein is eight years old. *R. S.* 39:10–13, as amended by *L.* 1946, *c.* 136, *sec.* 9.

It is also provided that it is unlawful to sell (or, under the statutory definition of the word "sell," to accept a chattel mortgage on) or purchase (or, under the statutory definition of the word "purchase," to make a chattel mortgage as mortgagor on) any motor vehicle in this State "except in the manner and subject to the conditions provided in this chapter." *R. S.* 39:10–5. And the legislative purpose is expressed that (*R. S.* 39:10–3):

"This chapter shall be so interpreted and construed as to effectuate its general purpose to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state."

*Chapter* 10 of *Title* 39 of the *Revised Statutes*, originally enacted as *L.* 1931, *c.* 166, the Motor Vehicle Bill of Sale Law, clearly provides for restrictions upon the transfer of title to motor vehicles, and imposes limitations upon conditional sales or chattel mortgages which were not within the scope of the predecessor statute, *L.* 1919, *c.* 168, which made no

reference to these transactions and was held not to be paramount to the 1919 Uniform Conditional Sales Act, *L.* 1919, *c.* 210. See *General Motors Acceptance Corp. v. Smith*, 101 *N. J. L.* 154, 157–158 (*E. & A.* 1925). *L.* 1919, *c.* 168, *supra*, with amendments thereto, was repealed by *section* 20 of *L.* 1931, *c.* 166, *supra*.

■ In summary, the statutory purpose is clearly designed and intended to be an exclusive method of regulation of title and evidence of ownership of motor vehicles to prevent fraud and theft of motor vehicles in this State. In this respect it is an enactment intended as an exercise of the police power of the State. *Cf. A Comparison of Land and Motor Vehicle Registration*, 48 *Yale L. J.* 1238, 1247, 1249–1250 (1939).

The plaintiff's attack on the constitutionality of the statute is directed to the general premise that the statute deprives it of property without due process of law. *N. J. Const.* 1947, *Art.* I, *par.* 1; *U. S. Const., Amend.* 14.

■ The police power of a state is comprehensive and reaches nearly every phase of civilized society. It is not limited to the mere protection of physical health and safety of the people but extends also to their financial security. This protective goal permits the state to prescribe such regulations as it may deem necessary to secure or tend to secure the persons within the state's confines from fraud. *Merchants Exchange of St. Louis v. State of Missouri ex rel. Barker*, 248 *U. S.* 365, 368, 39 *S. Ct.* 114, 63 *L. Ed.* 300, 306 (1919); *Hall v. Geiger-Jones Co.*, 242 *U. S.* 539, 550–552, 37 *S. Ct.* 217, 61 *L. Ed.* 480, 489–490 (1917); *Mutual Loan Co. v. Martell*, 222 *U. S.* 225, 233–234, 32 *S. Ct.* 74, 56 *L. Ed.* 175, 178–179 (1911); 3 *Willoughby on the Constitution of the United States* (2d ed. 1929), *sec.* 1169, *pp.* 1767–1768; *sec.* 1176, *p.* 1774. 11 *Am. Jur., Constitutional Law, sec.* 273, *p.* 1027; *sec.* 281, *p.* 1040. Compare *Family Finance Corp. v. Gaffney*, 11 *N. J.* 565, 569–574 (1953); *Lane Distributors, Inc., v. Tilton*, 7 *N. J.* 349, 365–366 (1951); 2 *Cooley's Constitutional Limitations* (8th ed. *Carrington*, 1927), *p.* 1332.

The type of statute here involved is not peculiar to this State. See *A Comparison of Land and Motor Vehicle Registration, supra* (48 *Yale L. J.*, at *p.* 1249). And this type of enactment is designed "to prevent traffic in stolen automobiles, and fraud on innocent purchasers, and to register all claims and interests in motor vehicles in one conclusive title instrument." *Ibid.* It is said that "Under some statutes, the mortgagee must obtain a new certificate of ownership, and, if he fails to do so, his lien is invalid as against subsequent innocent purchasers or encumbrancers who comply with the statute, though his mortgage is duly filed." 7A *Blashfield, Cyclopedia of Automobile Law and Practice* (*Perm. Ed.* 1950), *sec.* 4701, *pp.* 34–35; *Royal Industrial Bank of Louisville v. Klein,* 92 *Ohio App.* 309, 110 *N. E. 2d* 40, 43–44 (*Ct. App.* 1952). In *Merchants Rating & Adjusting Co. v. Skaug,* 4 *Wash. 2d* 46, 102 *P. 2d* 227, 229–230 (*Sup. Ct.* 1940), the Washington Supreme Court held that a chattel mortgagee who failed to join the mortgagor in an application for a new certificate of ownership lost his lien with respect to subsequent purchasers or mortgagees without notice thereof although he had recorded his chattel mortgage in the county of residence of the mortgagor and the pertinent state motor vehicle act did not expressly render the mortgage void under these circumstances. *Cf. Consumers Credit Co. v. Manifold,* 65 *Idaho* 238, 142 *P. 2d* 150 (*Sup. Ct.* 1943). See also *Automobiles-Registration of Title and Transfer-Effect on Ownership,* 37 *Mich. L. Rev.* 758 (1939); *Automobiles: Effect of Non-Compliance with Statutes Governing Transfer of Motor Vehicles on Civil Rights and Liabilities,* 28 *Calif. L. Rev.* 64 (1939).

It is, of course, axiomatic that the right of property protected by our Federal and State Constitutions includes the right to dispose of it and the right of disposition is protected equally with the ownership. 11 *Am. Jur., Constitutional Law, sec.* 335, *pp.* 1146–1147. *Cf. Cameron v. International, etc., Union No.* 384, 118 *N. J. Eq.* 11, 22–23 (*E. & A.* 1935). However, freedom of disposition of property, or liberty of contract, is not necessarily violated by re-

strictions imposed thereon under the police power, even though conditions that arise from the operation of the statute render ineffective related contracts which in themselves may be lawful. *Bayside Fish Flour Co. v. Gentry,* 297 *U. S.* 422, 427, 56 *S. Ct.* 513, 80 *L. Ed.* 772, 776 (1936) ; 11 *Am. Jur., Constitutional Law, sec.* 339, *p.* 1157. *Cf.* 3 *Willoughby on the Constitution of the United States* (*2d ed.* 1929), *sec.* 1180, *pp.* 1178 *et seq.* An exercise of the police power by a legislative body is not rendered unconstitutional merely by the fact that its enforcement works curtailment of private activity, even to the point of prohibition thereof. *Monmouth Lumber Co. v. Ocean Township,* 9 *N. J.* 64, 71 (1952).

▉▉▉▉ The liberty guaranteed by the Federal and State Constitutions in this respect is not absolute, but is merely freedom from arbitrary restraint. *Cameron v. International, etc., Union No.* 384, *supra* (118 *N. J. Eq.* 11, at *pp.* 23, 28 (*E. & A.* 1935)) ; *Bayonne Textile Corp. v. American Federation of Silk Workers,* 116 *N. J. Eq.* 146, 155 (*E. & A.* 1934). It has been stated that "\* \* \* 'absolute' private rights are not known to the law \* \* \*" 3 *Willoughby on the Constitution of the United States* (*2d ed.* 1929), *sec.* 1215, *p.* 1820. *Cf. Knoxville Iron Co. v. Harbison,* 183 *U. S.* 13, 22, 22 *S. Ct.* 1, 46 *L. Ed.* 55, 61 (1901). Not only is this so, but it is settled "\* \* \* that a legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt." *Behnke v. New Jersey Highway Authority,* 13 *N. J.* 14, 25 (1953) ; *Reingold v. Harper,* 6 *N. J.* 182, 194–195 (1951) ; 1 *Cooley's Constitutional Limitations* (*8th ed., Carrington,* 1927), *pp.* 371–379. *Cf. Yanow v. Seven Oaks Park, Inc.,* 11 *N. J.* 341, 353 (1953) ; 3 *Willoughby on the Constitution of the United States* (*2d ed.* 1929), *sec.* 1120, *p.* 1705.

▉▉▉▉ The applicability of these principles or their verity is not disputed by the parties to this appeal. The plaintiff's sole argument is that the statutory provisions are ineffective in that a second mortgagee (in which category the plaintiff

does not stand) is unable to record his second chattel mortgage with the Director of Motor Vehicles because he is unable to obtain the certificate of ownership. As hereinbefore indicated, the certificate of ownership (if the statute is complied with) is lodged with the first mortgagee and may not be delivered to the owner-mortgagor until the obligation or encumbrance is satisfied. The statute does not prohibit a second mortgage. The direct result of the provisions of the statute is that a second mortgagee must obtain the certificate of ownership and submit it to the Director of Motor Vehicles with his mortgage for recording, filing and issuance of a new certificate. The statute prohibits the making of chattel mortgages on motor vehicles except under these conditions, so it is evident that a lender who loans money upon the security of a motor vehicle without demanding and obtaining the certificate of ownership therefor is careless with his own rights and funds.

Insofar as the owner of the motor vehicle is concerned the statute imposes a limitation on his use of the property as security for his debts. Motor vehicles are subject to limitations of use by virtue of the registration statutes and such a statute is constitutional. *Unwen v. State,* 73 *N. J. L.* 529, 534 (*Sup. Ct.* 1906), affirmed *sub nom. State v. Unwin,* 75 *N. J. L.* 500, 501 (*E. & A.* 1907).

Insofar as subsequent chattel mortgagees of motor vehicles are concerned, the statute imposes a burden of obtaining the certificate of ownership prior to the acceptance of the motor vehicle as security for a loan. Laws are not rendered unconstitutional by the mere fact that they impose burdens, for the right to impose burdens is an essential ingredient of the police power. *Rottschaefer on Constitutional Law* (1939), *pp.* 521–522; 11 *Am. Jur. Constitutional Law, sec.* 297, *p.* 1066.

While the owner's and the mortgagee's enjoyment of business rights as above discussed are incidents of the right of property, the question reduces itself to one of reasonableness of the burdens and restraints imposed. 3 *Wil-*

*loughby on the Constitution of the United States* (*2d ed.*
*1929*), *sec.* 1120, *p.* 1705. In other words, the means pro-
vided by the Legislature to effectuate protection under the
police power must be reasonably necessary and appropriate
for the accomplishment of that purpose. *Ibid; Stephenson
v. Binford,* 287 *U. S.* 251, 53 *S. Ct.* 181, 77 *L. Ed.* 288
(1932). *Cf. Lochner v. New York,* 198 *U. S.* 45, 46, 25
*S. Ct.* 539, 49 *L. Ed.* 937, 941 (1905). The states' rights
"to legislate against what are found to be injurious practices
in their internal commercial and business affairs" have been
broadened since the *Lochner* case, *supra,* although the basic
principle of reasonableness has not been overriden by the
United States Supreme Court. *Lincoln Federal Labor Union
v. Northwestern Iron & Metal Co.,* 335 *U. S.* 525, 535–537,
69 *S. Ct.* 251, 93 *L. Ed.* 212, 220–221 (1949).

In the present case the legislative purpose is to protect the
people of this State from fraudulent transfers of motor ve-
hicles. The means enacted by the Legislature is in effect a
bar to the making of mortgages subsequent to a conditional
sale or chattel mortgage which remains unsatisfied unless the
owner (or the subsequent mortgagee) is able to obtain the
consent of the first mortgagee to the subsequent transaction.
In an analogous situation, in the case of *Mutual Loan Co.
v. Martell, supra,* ([222 *U. S.* 231–235, 32 *S. Ct.* 74–76]
56 *L. Ed.* 178–179), the United States Supreme Court af-
firmed a judgment of the Supreme Judicial Court of Mass-
achusetts (200 *Mass.* 482, 86 *N. E.* 916, 43 *L. R. A., N. S.,*
746) holding constitutional under the 14th Amendment a
Massachusetts statute conditioning the right to assign wages
on the procuring of the consent of the assignor's wife al-
though her consent could not be legally forced. The New
Jersey statute now before us indicates not ineffectiveness but
imposition of a burden on prospective subsequent mortgagees.
The recording procedure provided by the statute is not lim-
ited to the recording of first mortgages and should be fol-
lowed if the certificate of ownership is submitted to the Di-
rector of Motor Vehicles with the subsequent mortgage.

There is nothing in the act which precludes the recording and notation of multiple liens.

The burden imposed is not unreasonable if consideration is given to the freedom of movement of and transfer of title to automobiles and the considerable volume of credit transactions associated therewith, as well as the motive to reduce thefts and to prevent frauds perpetrated upon individuals and finance companies in this connection. *Cf. Merchants Rating & Adjusting Co. v. Skaug, supra* (102 *P. 2d,* at *page* 229). Legislation may be "tested by the concrete conditions which induced it." *Mutual Loan Co. v. Martell, supra; 3 Willoughby on the Constitution of the United States (2d ed.* 1929), *sec.* 1212, *p.* 1818. Further, the plaintiff, who alleged ineffectiveness (or unreasonableness) of the statute in this respect, has not endeavored to prove it to be unreasonable. *Cf. State v. Mundet Cork Corp.,* 8 *N. J.* 359, 370–371 (1952), *certiorari* denied 344 *U. S.* 819, 73 *S. Ct.* 14, 97 *L. Ed.* 637 (1952); *Corwin, The Constitution and What It Means Today (10th ed.* 1948), *p.* 79.

This construction of *R. S.* 39:10–11, as amended, *supra,* in no way harms the first chattel mortgagee, for his rights are completely protected if he complies with the statute, which affords him additional protection for the preservation of the security on which he relies.

We find that *R. S.* 39:10–11, as amended, *supra,* was not an unconstitutional deprivation of the plaintiff's property without due process of law.

## C

The remaining question relating to the effect of the decision of the Superior Court, Law Division, on November 21, 1952 in another matter between different parties, namely the *Sayre & Fisher Brick Co.,* case, *supra,* is without merit.

It is be observed that at the time of the plaintiff's chattel mortgage transaction *R. S.* 39:10–11, as amended (including the 1951 amendment), *supra,* had not been declared uncon-

·stitutional. The Superior Court, Law Division, rendered its decision months after the plaintiff accepted its chattel mortgage. Therefore no hardship not of its own making is imposed upon the plaintiff by our determination herein.

## CONCLUSION

For the reasons expressed in this opinion the judgment of the Superior Court, Law Division, is reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice HEHER—1.