In the Matter of **FERRO CONTRACTING CO., Inc., Bankrupt.**
**Livingston National Bank, Appellant.**
No. 16167.

United States Court of Appeals
Third Circuit.

Argued March 30, 1967.

Decided June 19, 1967.

Rehearing Denied July 24, 1967.

---

Herman D. Michels, Newark, N. J. (Toner, Crowley, Woelper & Vanderbilt, Roger L. Toner, Roger M. Nelson, Newark, N. J., on the brief), for appellant.

Allan L. Tumarkin, Newark, N. J., for appellee.

Before KALODNER and SEITZ, Circuit Judges, and BODY, District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

This appeal requires the resolution under New Jersey law of competing claims to the proceeds from the sale of certain assets of the bankrupt Ferro Contracting Co., Inc. The referee held that the assets in question were pieces of construction equipment and that therefore the Livingston National Bank (appellant herein) had secured a valid lien thereon by filing on June 19, 1963, a financing statement with the Secretary of State pursuant to the New Jersey Uniform

Commercial Code, 12A N.J.S.A. 9–401(1)(c). The district court reversed, holding in favor of the trustee (appellee herein) that the assets were motor vehicles and that therefore the bank's lien was invalid because no certificate of ownership or statement of encumbrance had been filed with the county clerk or with the Director of Motor Vehicles pursuant to the New Jersey Motor Vehicle Certificate of Ownership Law, 39 N.J.S.A. 10–11, subd. C.[1]

The assets in dispute consisted of the following five items: a Michigan front end loader, three crawler tractor bulldozers, and a backhoe. These items were used by the bankrupt company in its construction business. It is agreed that the bank's lien in the amount of $17,577.15 is valid unless these assets are considered to be motor vehicles.[2] Consequently, the controlling issue is whether the five items fall within the category of "motor vehicles" as used in the Certificate of Ownership Law.

There are apparently no New Jersey cases in which it was necessary to decide whether construction machinery is included within the meaning of "motor vehicle" as used in the Certificate of Ownership Law. Nor is there a consistent pattern in other areas of New Jersey law. For example, in National State Bank v. Rapp, 90 N.J.Super. 300, 217 A.2d 325 (1966), certif. granted, 47 N.J. 91, 219 A.2d 425 (1966), "motor vehicle" as used in the Garage Keepers and Automobile Repairmen's Act, 2A N.J.S.A. 44–20 et seq., was held to include a bulldozer similar to the ones involved in the present case. In contrast, Borough of Bogota v. Brewster Equip. Co., 83 N.J.Super. 586, 200 A.2d 629 (1964), seems to indicate that "motor vehicle" as used in 39 N.J.S.A. subtitle 1 does not include construction equipment, at least for personal property taxation purposes.

■ While there is thus no decisive New Jersey case law, a fairly specific statutory definition of "motor vehicle" can be found in title 39 which covers motor vehicles and traffic regulation generally. The Certificate of Ownership Law, chapter 10 in subtitle 2 of title 39, does not itself contain a definition of "motor vehicle". However, chapter 10 does include a definition of "new motor vehicle"[3] which closely parallels the definition of "motor vehicle"[4] in subtitle 1. Subtitle 1 also contains a definition of "vehicle".[5] From these sources the following definition emerges: As used in the Certificate of Ownership Law, "motor vehicle" means every device in, upon or by which a person or property is or may be transported upon a highway, excepting all vehicles propelled by muscular power or used only upon rails or tracks.

It is obvious that the five assets here involved do not fall within the exception

1. It is clear from 12A N.J.S.A. 9–302 that if the Certificate of Ownership Law is applicable to the assets involved in this case its provisions and not those of the Uniform Commercial Code govern the proper place of filing.

2. The trustee did not challenge in the district court, nor does he challenge here, the referee's ruling that the security transaction was not violative of 14 N.J.S.A. 14–2 which prohibits transfers of assets in contemplation of insolvency.

3. "'New motor vehicle' means only a newly manufactured motor vehicle, and includes all such vehicles propelled otherwise than by muscular power, and motor cycles, trailers and tractors, excepting such vehicles as run only upon rails or tracks." 39 N.J.S.A. 10–2.

4. "'Motor vehicle' includes all vehicles propelled otherwise than by muscular power, excepting such vehicles as run only upon rails or tracks." 39 N.J.S.A. 1–1.

5. "'Vehicle' means every device in, upon or by which a person or property is or may be transported upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." 39 N.J.S.A. 1–1. In the court below counsel for the trustee argued that this definition of "vehicle" should not be considered. However, he does not appear to advance this argument in his brief in this Court. In any event, the meaning of "vehicle" must be taken into account because the definition of "motor vehicle" refers explicitly to "vehicles."

of "vehicles propelled by muscular power." [6] As for the affirmative part of the definition of "motor vehicle", the lower court concluded that the assets in issue are devices "in, upon or by which a person or property is or may be transported upon a highway" because they "of necessity require the presence of a person aboard to operate" them and are "required to be licensed."

■ This conclusion of the district court is best analyzed in the light of the purposes of the Certificate of Ownership Law. The Supreme Court of New Jersey in National City Bank of New York v. Del Sordo, 16 N.J. 530, 109 A.2d 631 (1954), discussed this law at length. Citing the provision which indicates how the Law is to be interpreted,[7] the Court concluded that consideration should be given "to the freedom of movement of and transfer of title to automobiles and the considerable volume of credit transactions associated therewith, as well as the motive to reduce thefts and to prevent frauds perpetrated upon individuals and finance companies in this connection." 109 A.2d 631, 639. These policy considerations seem to have little application to construction equipment. We therefore believe that the definition of "motor vehicle" was not intended to embrace machinery which normally operates at construction sites even though literally it perhaps can be used to transport persons on a highway.

Both the referee and the district court noted that after the present controversy arose the Certificate of Ownership Law was amended to exclude from its coverage every "nonconventional type motor vehicle" such as is here involved. The district court concluded that this amendment provides "some indication that the subject chattels would have been more specifically included originally within the definition of 'motor vehicle' had the legislature foreseen the type question which exists in this case." However, we think it can be argued here with equal force that the recent amendment did no more than make clear the pre-existing legislative intent as to the scope of the Law.[8]

■ Accordingly, we conclude that the bank's lien was not subject to the filing requirements of the Certificate of Ownership Law and is therefore valid. In view of our conclusion we find it unnecessary to discuss other issues raised by the parties, including whether any weight should be given to the administrative interpretation which the chief of the Certificate of Ownership Bureau placed upon the term "motor vehicle".

One other matter requires our attention. The district court reversed the referee's award in the bank's favor of $250 for reasonable expenses incurred in picking up, servicing, and storing the construction equipment and of $1,015.00 for reasonable counsel fees. The district court stated that these expenses were not allowable because incurred after the bankruptcy petition had been filed on September 10, 1964. The trustee in its brief filed with us has urged that, in the event the bank's lien is upheld, "the extent and value of the services and expenses should be fixed and determined by the

---

6. At the proceedings before the referee the chief of the Certificate of Ownership Bureau suggested that Caterpillar treads are "tracks" within the meaning of the exception of vehicles "used only upon rails or tracks." We find it necessary here only to point out that the definition of "vehicle" refers to "stationary" rails or tracks.

7. "This chapter shall be so interpreted and construed as to effectuate its general purpose to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state." 39 N.J.S.A. 10–3.

8. The testimony of the chief of the Certificate of Ownership Bureau indicated that there had been considerable administrative confusion as to the coverage of the term "motor vehicle." Considering this confusion we attach no particular significance to the fact noted by the court below that a certificate of ownership had been issued for the Michigan front end loader.

District Court, on remand." Having indicated in this opinion that the bank's lien is in fact valid, we must decide whether such a remand is required.

■ In the proceedings before the referee three affidavits were filed which described the collection services rendered for the bank. The trustee apparently made no challenge to the accuracy of these affidavits. We think that the determination of the extent and value of the services was properly for the referee in the first instance and that in the circumstances of this case we are in a position to review the referee's award without further proceedings in the court below. We thus see no necessity for a remand to the district court on this point and proceed to analyze whether the referee's allowance of collection expenses should be reinstated.

We note preliminarily that the referee's award had a contractual basis. The promissory note and chattel mortgage which were executed by the company specifically provided that the bank could recover expenses of collection including reasonable attorney's fees. However, a problem remains as to the effect of the debtor's subsequent bankruptcy.

With respect to non-legal expenses, the referee limited his allowance to charges incurred before bankruptcy. Apparently the referee's conclusion was based on the proposition that the trustee obtains control of a bankrupt's property at the date the petition is filed and thereafter acts on behalf of all creditors. But we need not indulge in speculation because the bank has not challenged the referee's denial of post-bankruptcy collection expenses and the trustee has not denied the bank's right to reasonable pre-bankruptcy expenses. The trustee's only contention seems to be that the evidence of pre-bankruptcy services does not sustain the referee's award.

■ The bankruptcy petition was filed on September 10, 1964. On September 7th the bank hired William F. Hegarty, Inc. to pick up the equipment. On that day Hegarty examined the five pieces of construction machinery. On September 9th Hegarty picked up one bulldozer. He took possession of the other equipment after bankruptcy. The bank paid Hegarty $475.00 for its services. The referee allowed only $150.00. This sum does not appear to us to be an unreasonable estimate of the value of Hegarty's pre-bankruptcy services. On September 1st the bank also had hired Sanford Bierman to be bailiff in the chattel mortgage foreclosure proceedings. He obtained a Certificate of Search on September 8th and on September 9th contacted Hegarty. After bankruptcy he performed other tasks. For all of his services the bank paid Bierman $323.82. The referee allowed only $100.00. Again, in our view the referee's estimate of the value of pre-bankruptcy services was not unreasonable. Thus, we do not think that the referee's award of $250.00 for non-legal collection expenses incurred prior to the filing of the bankruptcy petition was improper.

■■ As for the bank's request of $3,000 for legal services and $133.54 for legal disbursements, the referee allowed $1,015.00. In our review of this allowance for reasonable legal fees incurred in the collection process it is not necessary to determine whether these services were rendered prior to bankruptcy. This is so because no matter when or how rendered, such fees if reasonable and if permitted by local law are assertable according to the contractual stipulation of the parties. Security Mortgage Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928). We think the referee in making his award of attorney's fees correctly followed the reasoning of In re Pack-it, Inc., 158 F.Supp. 148 (D.N.J. 1958). And the amount of the award is certainly not unreasonable.

The order of the district court will be reversed and judgment entered against the trustee in the bank's favor in the amount fixed by the referee at $18,842.-15 to be paid from the proceeds of the sale of the five pieces of construction equipment.