[No. 6565-1-III.   Division Three.   February 20, 1986.]

JOSEPH G. WARD, ET AL, *Respondents,* v. C.I.T. CORPORATION, *Appellant.*

*Diane M. Hermanson, Philip S. Brooke,* and *Paine, Hamblen, Coffin & Brooke,* for appellant.

*Larry D. Gustafson* and *Gustafson & Reynolds,* for respondents.

MUNSON, J.—C.I.T. Corporation appeals from a judgment holding the respondents, Joseph G. Ward and Donald P. and Patricia A. Manfred, were entitled to the proceeds realized from the sale of a front end loader for which both parties had a security interest. C.I.T. argues its interest took priority over the respondents' interest because the respondents failed to comply with the requirements of RCW 46.12.095 pertaining to perfection of a security interest in a vehicle for which a certificate of ownership is required. We disagree and affirm.

The following facts are taken primarily from the trial court's findings to which neither party has assigned error. In 1977, Woodard Brothers, Inc., purchased a used 1969 Caterpillar model 950 rubber–tired wheel loader (loader) equipped with a 3–yard general purpose bucket from Byrne Machinery Company. Byrne was given a security interest in the loader and later filed a financing statement with the Secretary of State.[1] Byrne also applied for a certificate of

---

[1]Former RCW 62A.9–401, as enacted under Laws of 1965, 1st Ex. Sess., ch. 157, § 9–401, p. 2574 (effective June 30, 1967), specified the place of filing a

ownership and license registration from the Department of Licensing.

In September 1977, a certificate of ownership was issued by the Department of Licensing, listing Woodard Brothers, Inc., as the registered owner and Byrne as the legal owner. At the time, Woodard Brothers, Inc., anticipated using the loader in a manner which would require a valid Washington vehicle license or in-transit permits. WAC 308-96A-140. A license registration certificate and vehicle plates were issued for the loader.

On December 31, 1979, Byrne released its security interest. Later, ownership of the loader was transferred to Woodard Excavation, Inc. (Woodard), which was reflected on a certificate of ownership. Woodard Brothers and Woodard were owned and operated by the same individuals.

On August 29, 1980, Woodard gave Mr. Ward and the Manfreds (Ward) a security interest in the loader as partial security for an original debt of $103,700. On September 23, Ward filed a financing statement evidencing their security interest in the loader. They apparently never saw or inspected the loader and were unaware a certificate of ownership or vehicle plates had been issued for the equipment.

On July 21, 1981, Woodard Brothers gave C.I.T. a security interest in various items of equipment, including this loader, as security for its loan of $470,751.48. C.I.T. filed a financing statement listing the equipment, including this loader, as security for the obligation of Woodard Brothers, Inc. Later, C.I.T. determined a certificate of ownership had been issued for the loader. On August 3, Woodard trans-

---

financing statement in situations not otherwise mentioned as the office of the Secretary of State. The place of filing was later changed to the Department of Motor Vehicles by Laws of 1977, 1st Ex. Sess., ch. 117, § 7, p. 436 (effective July 1, 1977). Under Laws of 1979, ch. 158, § 211, p. 1016 (effective March 30, 1979), the place of filing became "the department of licensing". RCW 62A.9-401, as amended by Laws of 1981, ch. 41, § 25, p. 183 (effective June 30, 1982) has retained the Department of Licensing as the place for filing a financial statement involving a security interest in collateral not otherwise mentioned in the statute.

ferred its ownership of the loader to Woodard Brothers, Inc. On September 25, the Department of Licensing issued a new certificate of ownership for the loader, showing Woodard Brothers, Inc., as the registered owner and C.I.T. as the legal owner.

During this time, C.I.T. had no actual knowledge Ward had a security interest in the collateral and that a prior financing statement had been filed evidencing their security interest. The previous certificate of ownership listed Woodard as both the registered and legal owner.

Subsequently, Woodard and Woodard Brothers, Inc., defaulted on the debts owed C.I.T. and Ward. C.I.T. took possession of the loader; $20,000 was realized from its sale pursuant to RCW 62A.9.

Ward sued C.I.T., claiming a superior interest in the loader because their filing was prior in time, and seeking damages for the amount of the sale proceeds. In response, C.I.T. asserted its security interest alone had been perfected; thus, it was entitled to the sale proceeds. In C.I.T.'s view, the only effective means for perfecting a security interest in the loader would be to note the same on the certificate of ownership issued by the Department of Licensing. The trial court entered judgment in favor of Ward; C.I.T. appeals.

The primary issue here concerns the proper method of perfecting a security interest in a loader which has been licensed for highway use. Neither party challenges the validity of the other's security interest; nor do the parties disagree on who is entitled to the proceeds of the sale of the collateral once the proper method of perfection is determined.

RCW 62A.9–302, prior to its amendment effective June 30, 1982, by the Laws of 1981, ch. 41, § 16, p. 173, provides in part:[2]

(3) The filing provisions of this Article do not apply to a security interest in property subject to a statute

---

[2] *See* Laws of 1979, ch. 158, § 210, p. 1015.

. . .

(b) of this state which . . . requires indication on a certificate of title of, such security interests in such property.

(4) A security interest in property covered by a statute described in subsection (3) can be perfected only . . . by indication of the security interest on a certificate of title or a duplicate thereof by a public official.

Pursuant to RCW 46.12.095:

A security interest in a vehicle other than one held as inventory by a manufacturer or a dealer *and for which a certificate of ownership is required* is perfected only by compliance with the requirements of this section:

(1) A security interest is perfected only by the department's receipt of: (a) The existing certificate, if any, and (b) an application for a certificate of ownership containing the name and address of the secured party and (c) tender of the required fee.

(2) It is perfected as of the time of its creation: (a) if the papers and fee referred to in the preceding subsection are received by this department within eight department business days exclusive of the day on which the security agreement was created; or (b) if the secured party's name and address appear on the outstanding certificate of ownership; otherwise, as of the date on which the department has received the papers and fee required in subsection (1).

(Italics ours.)

RCW 46.04.670 defines "vehicle" as:

[E]very device capable of being moved upon a public highway and in, upon, or by which any persons or property is or may be transported or drawn upon a public highway, excepting devices moved by human or animal power or used exclusively upon stationary rails or tracks, except that mopeds shall be considered vehicles or motor vehicles for the purposes of chapter 46.12 RCW, but not for the purposes of chapter 46.70 RCW.

As Ward concedes, this definition of vehicle is broad enough to include this loader. RCW 46.12.010 describes when a certificate of ownership is required for a vehicle. A

vehicle of this type is not always required to have a certificate of ownership.

RCW 46.16.010, which sets forth the licensing requirements for vehicles used on public highways, contains the following proviso:

> [T]hese provisions shall not apply to equipment defined as follows:
>
> "Special highway construction equipment" is *any vehicle which is designed and used primarily for grading of highways, paving of highways, earth moving, and other construction work on highways and which is not designed or used primarily for the transportation of persons or property on a public highway and which is only incidentally operated or moved over the highway. It includes,* but is not limited to, road construction and maintenance machinery so designed and used such as *. . . bucket loaders, . . .*

(Italics ours.)

Pursuant to RCW 46.01.110, the Director of Licensing promulgated WAC 308–96A–140, which provides:

> Special construction equipment. Vehicles defined as "special mobile equipment" (RCW 46.04.552) or "special highway construction equipment" (RCW 46.16.010) must be licensed or carry intransit permits when they travel upon public roadways from one project to another or between a project and their base of operations. Only within the confines of a contract project are these vehicles exempt from the licensing requirement. A special permit from the highway department is also required for oversize or overweight equipment.

█ When the exemption in RCW 46.16.010 and the above regulation are considered together, it is clear licensing is not necessarily required when construction and maintenance equipment is operated on public roadways. Although a certificate of ownership has been issued for this loader and it was licensed, annual renewal of the license was not required. In–transit permits could have been obtained when traveling from one construction project to

another. The specific exemption from licensing for highway equipment in RCW 46.16.010 indicates the Legislature did not generally intend the requirement of a certificate of ownership as a prerequisite to the limited and incidental use of such equipment on public roadways; the issuance of the certificate of ownership is optional, rather than required, in terms of the owner's decision to license rather than obtain in–transit permits. In this respect, it could not be said this loader is "a vehicle . . . for which a certificate of ownership is *required*". (Italics ours.) RCW 46.12.095.

The primary purpose behind a requirement of a certificate of ownership in terms of sale or transfer is to insure "freedom of movement . . . and transfer of title to automobiles and considerable volume of credit transactions associated therewith, as well as the motive to reduce thefts and to prevent frauds perpetrated upon individuals and finance companies in this connection". *National City Bank v. Del Sordo,* 16 N.J. 530, 545, 109 A.2d 631, 639 (1954); *see also In re Ferro Contracting Co.,* 380 F.2d 116 (3d Cir.), *cert. denied,* 389 U.S. 974, 19 L. Ed. 2d 466, 88 S. Ct. 475 (1967). This type of equipment has limited self–mobility; less frequent transfers of ownership; greater likelihood of being used as collateral for loans; a less frequent use on highways than automobiles and trucks, and more off–highway use. It is reasonable to assume the Legislature did not intend to *require* a certificate of ownership for this loader, even though it comes within the term "vehicle", as defined in RCW 46.04.670.

The Uniform Commercial Code was intended to simplify and create an atmosphere of certainty concerning commercial transactions. Requiring a lender to review the debtor's potential use of each asset of this type, in order to determine the proper method of perfecting his interest, would be inconsistent with the purposes of uniformity and certainty associated with the enactment of RCW Title 62A.

Ward's security interest being first in time is first in priority.

The judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.